## BERTONAZZI v. HILLMAN, ADM'X

[No. 137, September Term, 1965.]

362

*Decided Febuary 14, 1966.*

The cause was argued before HAMMOND, MARBURY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*William E. Chamberlain*, with whom were *Ginsberg & Ginsberg* and *Hyman Ginsberg* on the brief, for appellant.

*Douglas R. Due* and *Paul F. Due* for appellee.

HAMMOND, J., delivered the opinion of the Court.

This case turns on whether the period of limitations of six calendar months after the date of qualification by the personal representative of a deceased tort-feasor prescribed by Code (1964 Replacement Vol.), Art. 93, § 112, was tolled by a suit brought in a county in which neither the decedent nor his administratrix resided.

The appellant was injured in March 1962 by the alleged negligence of an employee of Edward Hillman, who operated a parking lot. The appellant's lawyer made claim against Hillman's insurer and there were dealings and negotiations between them from July 1962 to March 14, 1963, when the lawyer filed suit on behalf of his client against Hillman individually in Baltimore County after he had looked at a map and, as he testified, "read it wrong," and decided that Hillman's house, which was close to the line, was in the County rather than in the City. Hillman had died in January, some forty-four days before suit was filed, a fact the lawyer found out as the result of the return of the sheriff of *mortuus est*, when he examined the docket shortly before July 18, 1963. He was much disturbed, in his words "panic stricken," at the discovery since he feared that limitations might already have run if the period began at Hillman's death or would soon run if it began with the qualification of his personal representative, and on July 18 he again filed suit in Baltimore County against Mrs. Hillman as administratrix of her husband, although he had learned she had qualified in the Orphans' Court of Baltimore City on February 6, 1963. The lawyer called Mrs. Hillman and, accord-

ing to his recollection, told her of the suit and advised her that there were "some technicalities in the case that might prevent a legitimate adjudication," and she replied that she would have no objection to a proper determination of the facts and referred him to her lawyer for further inquiries and discussion. The appellant's lawyer then called Mrs. Hillman's lawyer and told him of the suit, the problem of proper venue, and, according to appellant's lawyer, of the problem of limitations. Mrs. Hillman's lawyer said he would accept service of process on behalf of Mrs. Hillman in the Baltimore County suit but that in so doing he was not consenting to jurisdiction. Appellant's lawyer says he told him he hoped to have that suit "removed to the City by agreement or something * * * and litigated." The definite recollection of Mrs. Hillman's lawyer was that absolutely no mention was made of limitations because "obviously if there had been any question of limitations I would not have undertaken to accept service * * * it immediately would have been a red flag to me."

Service of process was accepted by Mrs. Hillman's lawyer on July 23, 1963. On August 19, 1963, some six months and fourteen days after Mrs. Hillman had qualified, an appearance was entered for her by a lawyer other than he who had accepted service on her behalf, and there was filed a motion to quash on the ground that Mrs. Hillman lived in Baltimore City and had qualified as administratrix there. The motion was granted and the suit dismissed on September 4, 1963. An hour or two later, appellant's lawyer refiled the suit in Baltimore City. After various preliminary pleading maneuvers, in the course of which Judge Byrnes rejected appellant's contention that the Baltimore County suit tolled the statutory period of limitations in § 112 of Art. 93, appellant's lawyer filed a "Plea of Estoppel as to the Statute of Limitations," in which he endeavored to set up facts showing that limitations had been waived or that Mrs. Hillman was estopped to assert limitations, largely, if not entirely, on the basis of the telephone conversation between appellant's attorney and Mrs. Hillman's attorney. Thereafter, the depositions of appellant's lawyer and Mrs. Hillman's lawyer were taken and Judge Carter then granted Mrs. Hillman's motion for a summary judgment.

We see no support whatever in the record for a finding of waiver or estoppel. Neither in the plea of estoppel nor in a long letter to Judge Byrnes is there mention of or reference to any express promise or agreement of Mrs. Hillman or her lawyer to waive the statute. It may well be that appellant's lawyer had the notion that the mere acceptance of service would toll the statute, but if he did, nothing that Mrs. Hillman or her lawyer said or did inspired or fostered the idea. There is no assertion that the representatives of Mr. Hillman's insurer led appellant to believe that liability would not be contested or that any legal defense would be waived. Appellant's lawyer, apparently in entire good faith, appears simply to have relied on his belief that the suit against the administratrix must be filed in Baltimore County because the original suit against her decedent had been and his hope that the suit either would be tried there or "removed to the City by agreement or something."

Appellant can have the case heard on the merits only if the filing of the suit in Baltimore County tolled the statutory period of limitations long enough for the final suit in Baltimore City to have been filed in time. Appellant's difficulty would not arise in the federal system or in most of the states of the Union; since almost all have statutes which would permit the transfer of the case from one jurisdiction to another without the need for new service of process or "saving" statutes which, after a plaintiff, in a timely filed suit, finds himself out of court on a ground other than the merits, permit a second suit on the same cause of action within a specified time. Some states have both types of statute. Maryland is one of the very few states that has neither. Nevertheless, we are persuaded that the six months' limitations period was tolled when, in the words of the proviso in § 112 of Art. 93, the appellant, in order to recover damages for injury to her person, commenced an action in Baltimore County within six calendar months after the date of the qualification of the administratrix. The effort to seek redress in a court of law against Hillman's estate was made in good faith, although inartificially both on the facts and under the law.

The Baltimore County court had jurisdiction of the subject matter and it had power to issue process which could be effectively served on a defendant anywhere in the State. Md. Rule

104. Maryland Rule 5 a. defines "action" as including "* * * all the steps by which a party seeks to enforce any right in a court of law or equity." Appellant took steps to enforce a right in Baltimore County and under Rule 140, which states that "an action at law shall be commenced by filing a declaration * * * or other original pleading," the steps she took amounted, under the literal language of the Rules, to commencement of an action. Since the Baltimore County court had jurisdiction of the subject matter and of the parties, the case would have been tried and decided on the merits unless the defendant chose to assert the personal right given her by Code (1965 Replacement Vol.), Art. 75, § 75, to avoid the inconvenience of defending a suit in a county in which she neither lived personally or officially nor worked (an inconvenience which, if it existed at all, would have been minimal in the present case) in a timely manner before submitting to the venue. Md. Rule 323; *McCormick v. Church,* 219 Md. 422; *Gemundt v. Shipley,* 98 Md. 657; *Cromwell v. Royal Can. Ins. Co.,* 49 Md. 366; *Yoe v. Gelston,* 37 Md. 233; *State of Maryland v. Gittings,* 35 Md. 169.

There can be no doubt that if the appellee, the defendant below, had not asserted improper venue and the case had remained in Baltimore County, the appellant would have timely commenced an action to recover for personal injuries under § 112 of Art. 93 of the Code, *Neel v. Webb Fly Screen Mfg. Co.,* 187 Md. 34, and the statute of limitations built into that section would not have been operative to defeat the claimant's right to seek damages. We see no compelling reason why the filing of the timely commenced action in court should not have the same effect until its dismissal for improper venue and be deemed to have interrupted the running of the statute from the date of its filing on July 18 to the date of its dismissal on September 4, a period of forty-four days. If forty-four days be deemed to have run from August 5, the period of limitations would have ended on September 18 and the appellant's third suit, that filed in Baltimore City which is now before us, was filed on September 4.

This interpretation of what § 112 of Art. 93 of the Code means when it says that an action must be commenced within six calendar months is consistent with the purposes and aims of limitation statutes generally and of the limitation here involved,

that is, it gratifies legislative intent, and is supported by eminent and persuasive authority. Statutes of limitations are designed primarily to assure fairness to defendants on the theory that claims, asserted after evidence is gone, memories have faded, and witnesses disappeared, are so stale as to be unjust. The six-month statute of limitations in suits against executors or administrators has the added purpose of requiring claimants seeking damages resulting from the negligence of a decedent to make claim by suit within six months so that the personal representative of the decedent can make the prompt settlement of the estate contemplated by the law without liability for claims not filed within the time and in the manner prescribed. *Chandlee v. Shockley,* 219 Md. 493, 502.

In the case before us the aim of the general purpose of a statute of limitations to insure prompt assertion of a claim and the aim of § 112 to require formal and timely notice by suit of the claim against the decedent were both gratified. The appellee, as administratrix of her husband's estate was as fully put on notice of the appellant's claim by the suit in Baltimore County as she would have been by suit in Baltimore City and in precisely the same manner, the manner specified by § 112, that is, the commencement of a law action for damages.

The Supreme Court, in a unanimous opinion, decided in *Burnett v. New York Central R. Co.,* 380 U. S. 424, 13 L. Ed. 2d 941, that the legislative intention in the Federal Employers' Liability Act would best be served by a holding that the three-year limitation period set in that act as part of the right to sue would be tolled by a suit timely commenced in a state court in Ohio which was later dismissed for improper venue, so that a second suit in a federal court, filed eight days after three years from the date of injury had elapsed, was timely filed. The Court said at page 430:

> "Both federal and state jurisdictions have recognized the unfairness of barring a plaintiff's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run. In both federal and state systems of justice rules have been devised to prevent this from happening."

The Court then referred to the transfer provisions of the federal code and, in footnote 8, listed the transfer statutes of the states having such provisions, and in footnote 9 the "saving" statutes of the states which utilize this means of avoiding injustice. The Court concluded at pages 434, 436, that:

"* * * the humanitarian purpose of the FELA makes clear that Congress would not wish a plaintiff deprived of his rights when no policy underlying a statute of limitations is served in doing so; * * * since petitioner brought a timely suit in the Ohio court, served defendant with process, and, after finding the state action dismissed for improper venue, filed his suit in the Federal District Court only eight days after the Ohio court dismissed his action, before his time for appealing from the Ohio order had expired, his federal court action was timely."

The fact that the six months' limitations period in § 112 is part of the right does not mean that the period can never be tolled under appropriate circumstances such as those in the present case to prevent perversion of the policy and purpose of a statute of limitations. *Chandlee v. Shockley,* and *Burnett,* both *supra;* 20 Md. L. Rev. 170 (1960); *Developments in the Law—Statutes of Limitations,* 63 Harv. L. Rev. 1177, 1186, 1234 (1950).

The saving statutes of most of the states which utilize this device provide that if an action is "commenced" within good time but is defeated by some technicality unrelated to the merits, a new action may be brought within a certain specified time, usually six months or a year, and that the second action is to be treated as a continuation of the first, the effect being that the original statute of limitations is tolled by the first suit, ineffectual to avoid dismissal as it was. The cases in these states hold with uniformity and in increasing numbers that an action is deemed to be "commenced" even though the venue was improper or the court lacked jurisdiction, the holdings having been made in cases of ordinary limitations statutes, contractual limitations periods and cases where the period of limitations is

part of the right. In one of these, *Gaines v. City of New York* (N. Y.), 109 N. E. 594, 596, Judge Cardozo said for the Court:

> "We think that, whatever verbal differences exist, the purpose and scope of the present statute are identical in substance with its prototype, the English act of 1623. [21 Jac. c. 16, § 4]
>
> "That the plaintiff's case is within the letter of the statute is hardly doubtful. He brought an action against the defendant, and the action was terminated otherwise than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute, or a final judgment upon the merits. If the protection of the statute is to be denied to him, it ought to be clearly shown that his case, though within the letter of the statute, is not within its reason. * * * The statute is designed to insure the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. * * * The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. When that has been done, a mistaken belief that the court has jurisdiction stands on the same plane as any other mistake of law. * * *
>
> "A suitor who invokes in good faith the aid of a court of justice, and who initiates a proceeding by the service of process, must be held to have commenced an action within the meaning of this statute, though he has mistaken his forum."

See also *Bollinger v. National Fire Ins. Co. of Hartford, Conn.* (Cal.) (Traynor, J.), 154 P. 2d 399; *Loomer v. Dionne* (Mass.) (Wilkins, J.), 155 N. E. 2d 411; *Roth v. Northern Assurance Company* (Ill.), 203 N. E. 2d 415; *Hoagland v. Railway Express Agency* (Fla. En Banc), 75 So. 2d 822; *Blades v. Southern Ry. Co.* (N. C.), 12 S. E. 2d 553; *Edmison v. Crutsinger* (Okla.), 25 P. 2d 1103; *Wasyk v. Trent* (Ohio), 191 N. E. 2d 58; *Wente v. Shaver* (Mo.), 169 S. W. 2d 947; *Schram v. Keane* (N. Y.), 18 N. E. 2d 136; *Lunkin v. Triangle Farms* (La.), 23 So. 2d 209. We think the appellant's suit

was commenced in Baltimore County with as much effect and with the same results as in the suits commenced in the cases cited.

There is nothing new or novel in this point of view. The concepts and rationale underlying the holding in *Burnett* and underlying the saving statutes and the holdings in the cases above cited go back at least to 1623, when the fourth section of the English limitation act, 21 Jac. 1 c. 16, § 4, was passed. Section 3 of the act provided specified periods of limitations for various causes of action. Section 4 then provided:

> "[I]f in any [of] the said actions or suits, judgment be given for the plaintiff, and the same be reversed by error, or a verdict pass for the plaintiff, and upon matter alleged in arrest of judgment, the judgment be given against the plaintiff, that he take nothing by his plaint, writ or bill; or if any [of] the said actions shall be brought by original, and the defendant therein be outlawed, and shall after reverse the outlawry, that in all such cases the party plaintiff, his heirs, executors or administrators, as the case shall require, may commence a new action or suit, from time to time, within a year after such judgment reversed, or such judgment given against the plaintiff, or outlawry reversed, and not after."

The English judges extended the statute greatly by applying it to situations but remotely analogous to those mentioned in the statute when they found it fair and equitable to do so, because of the hardship that would have been inflicted in particular cases on a litigant by a rigid adherence to the terms of § 4, as, for example, where a defendant who had been sued within the period of limitations, died and the action abated and, after limitations had then run, suit was permitted against his executor. *Swindell v. Bulkeley,* 18 Q. B. 250; *Curlewis v. Lord Mornington,* 7 El. & Bl. 285, 119 Eng. Rep. 1252; *Gaines, supra* at page 595 of 109 N. E.; *Bollinger, supra* at page 405 of 154 P. 2d. Section 4 is the forefather of many saving statutes of other states and became part of the law of Maryland. Kilty, in his Report of English Statutes 238 (1811), classified it as "ap-

plicable and proper to be incorporated" into the law of the State, as did 2 Alexander's British Statutes 600 (2d ed. 1912). It was applied as complementary to the statutory Maryland version of § 3 of 21 Jac. c. 16 (now Code (1964 Replacement Vol.), Art. 57, § 1) in *Drane v. Hodges,* 1 Har. & McH. 518, so as to permit the second suit. Our predecessors refused to apply § 4 to a case which had been dismissed by the plaintiff in *Cawood v. Whetcroft,* 1 H. & J. 103, and it was not referred to in *Williams v. Snyder, Adm'r,* 221 Md. 262, where the plaintiff had taken a *non pros.*

We do not hold that § 4 of Ch. 16 of the Act of 1623, either under its literal terms, or as liberally extended by the English Courts, of itself, controls or is applicable to the case at bar. Nevertheless, we feel that we have followed its spirit in taking the view that the commencement of the suit against the administratrix in Baltimore County tolled the statute and that in so doing we gave recognition to the soundness of the purpose of § 4, particularly as it was judicially liberalized in English law, to save a claim for determination on the merits if an action to enforce had been timely filed, even though the action failed for a technical or procedural reason. That this recognition is sound would seem to be indicated by the fact that for over three hundred years legislatures and courts have followed the spirit, aims and purposes of § 4 of Ch. 16 of the Act of 1623.

> *Judgment reversed, with costs, and case remanded for further proceedings.*