584 A.2d 108

**Jeanne M. FURST, Personal Representative of the Estate of William J. Furst**

v.

**Eddie ISOM, et al.**

**No. 317, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 17, 1991.

Jonathan P. Stebenne (William A. Ehrmantraut and Wharton, Levin & Ehrmantraut, on the brief), Annapolis, for appellant.

Robert E. Cappell, Washington, D.C., for appellee.

Argued before GARRITY, ROBERT M. BELL and JAMES S. GETTY (Retired, Specially Assigned), JJ.

ROBERT M. BELL, Judge.

At issue on this appeal by Jeanne M. Furst, Personal Representative of the Estate of William K. Furst, appellant,[1] is the propriety of the judgment of the Circuit Court for Prince George's County, granting the motion to vacate,[2] filed by Mr. and Mrs. Eddie Isom, appellees, and remanding the case to the Health Claims Arbitration Office for further proceedings.[3] We shall hold that the trial court ruled properly; hence, we will affirm.

---

**1.** The appeal was initially taken by William F. Furst, who died while the appeal was pending.

**2.** The panel chairman entered a Final Order of Award in favor of the health care providers. In addition to filing an action to nullify that award, along with a Declaration and Request for Jury Trial, *see* Maryland Cts. & Jud.Proc.Code Ann. § 3–2A–06(b), appellees filed a Petition to Vacate Award and a Preliminary Motion to Vacate Award. *See* Maryland Cts. & Jud.Proc.Code Ann. § 3–224(b) and § 3–2A–06(c); Maryland Rule BY5. In both the petition and the preliminary motion, appellees alleged that the panel chairman exceeded his powers when he dismissed appellees' arbitration claims.

**3.** Appellant presented three questions for our consideration, namely:
   1. Did the panel chairman properly conclude that appellees' failure to timely file a certificate of qualified expert mandated dismissal of their claim?

The facts out of which this appeal has arisen are largely not in dispute. Appellees are the surviving parents and personal representatives of the Estate of Tybal Isom, who died on August 12, 1985, while a patient at Southern Maryland Hospital Center. Believing that appellant, the decedent's attending physician, the hospital, and Dr. James Smit failed to render proper medical care, which accounted for her death, appellees filed a statement of claim with the Health Claims Arbitration Office. Notwithstanding appellees' counsel's belief that he had attached to the claim a letter from a qualified expert certifying to the merits of the claim, *see* Maryland Cts. & Jud.Proc.Code Ann. § 3–2A–04(b)(1), a certificate of qualified expert, required to be filed within 90 days of the filing of the statement of claim, was not filed with the Health Claims Arbitration Office until October 29, 1987. Because the 90th day following the filing of the statement of claim fell on October 12, 1987, it was filed 17 days late.

Appellant promptly moved, on October 30, 1987, to dismiss appellees' action for violation of § 3–2A–04(b)(1). His motion was denied on January 19, 1988, the panel chairman finding that appellees had shown good cause for their failure timely to file the certificate of a qualified expert.

The three year statute of limitations applicable to this case *see* Maryland Cts. & Jud.Proc.Code Ann. § 5–109(a), expired on August 11, 1988. Before that time, on July 14, 1988, this Court filed its opinion in *Robinson v. Pleet*, 76 Md.App. 173, 544 A.2d 1, *cert. denied*, 313 Md. 689, 548 A.2d 128 (1988). We held that failure timely to file the certificate of qualified expert mandates dismissal of the action.

---

2. Was the panel chairman's decision to grant appellant's motion to dismiss rationally based on relevant case law and statutes?
3. Did the trial court err in granting the petition to vacate since there was no evidence of bias, partiality, irrational exercise of judgment or other wrongdoing to support such a motion?
These questions are subsumed in the question set forth above.

Armed with the *Pleet* decision, appellant filed a second motion to dismiss, which the panel chairman granted. Appellees immediately filed with the arbitration office a second statement of claim alleging the same cause of action. That action was dismissed, by the panel chairman, on grounds of limitation. The panel chairman then issued a Final Order of Award in favor of appellant.

As we have seen, appellees filed, in the Circuit Court for Prince George's County, *inter alia,* a petition and preliminary motion to vacate the arbitration award. The motion was granted following oral argument off the record in chambers. Appellant's subsequently filed motion for reconsideration was denied.

Appellant argues, relying on *Pleet,* that the panel chairman properly granted his second motion to dismiss appellees' claim. He reasons [4] that, given the strong public policy in favor of requiring litigants to follow the special statutory procedure, *see Pleet,* 76 Md.App. at 179, 544 A.2d 1 and the clear and unambiguous language of § 3–2A–04(b)(1), the panel chairman had no discretion to forgive noncompliance with the statute, but, in fact, was required to dismiss the action once it was determined that both the certificate, and the request for extension of time, had been untimely filed.

As we have indicated, the panel chairman granted two motions to dismiss. He granted the first when *Pleet* was brought to his attention, causing him to recognize that his

---

4. Appellant perceives the *Pleet* issue to involve a determination of whether the principle there enunciated should be applied retroactively, or merely prospectively, *to the facts sub judice.* He makes the point that, because the court in *Pleet* merely interpreted the statutory provision at issue and did not establish any new principle of law, neither overruling past precedents nor involving an issue of first impression, not clearly foreshadowed, *see Chevron Oil Company v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), the panel chairman properly applied the *Pleet* interpretation of § 3–2A–04(b)(1) in the instant case. In other words, appellant believes that *Pleet* applies retroactively and not, as the trial court might have determined, only prospectively.

prior decision on appellant's first motion to dismiss was incorrectly decided. That dismissal was, as the statute prescribes, "without prejudice." The second motion to dismiss granted by the panel chairman involved appellees' refiled statement of claim. The effect of that ruling was to terminate appellees' cause of action, to put them out of court without further remedy. It is, thus, that ruling—the one relating to the refiled claim—that is of critical importance on this appeal. And it is that ruling at which appellees' motion to vacate was directed.

Critical to appellant's argument that the motion to vacate was improperly granted (even though appellant does not explicitly state it) is the proposition "that when the Statute of Limitations once begins to run, nothing will stop or impede its operation," *Walko Corp. v. Burger Chef*, 281 Md. 207, 210, 378 A.2d 1100 (1977), quoting *Ruff v. Bull*, 7 H. & J. 14, 16 (1825), absent "a saving,"[5] or other, statute which would serve to preserve an action, timely filed, but dismissed on a technical ground. Indeed, just that point was made in *Walko Corp., supra.*

In *Walko Corp.*, the question whether the mere filing of an action in one jurisdiction tolls the statute of limitations with respect to a second action, involving the same claim, filed in another jurisdiction, was certified by the District Court for the District of Columbia to the Court of Appeals for decision. In that case, Walko moved to intervene as plaintiff in a lawsuit then pending in the District of Columbia Court. After the motion to intervene had been pending for almost 60 days, that Court denied it. Forty-four days later, Walko filed an action, almost identical to the complaint accompanying the unsuccessful motion to intervene, in the United States District Court for the District of

---

**5.** A "saving" statute is one that permits reinstatement of an action dismissed after expiration of the statute of limitations, for reasons unrelated to the merits. *Bertonazzi v. Hillman, Adm'x*, 241 Md. 361, 368, 216 A.2d 723 (1966).

Maryland.[6] Burger Chef's motion for summary judgment on limitation grounds was granted, the court determining that the cause of action accrued more than three years prior to its filing.

Walko argued on appeal that the statute of limitations was tolled while its motion to intervene in the District of Columbia Court was pending. The Court of Appeals rejected the argument, reiterating the "rigorous stance" Maryland courts have taken regarding the running of statutes of limitations: once begun, they are not stopped or impeded in the absence of a "saving" statute. Then, observing that Maryland is one of the minority of states without a "saving" statute, 281 Md. at 211, n. 2, 378 A.2d 1100, the Court stated emphatically that "[a]bsent a statutory provision saving the plaintiff's rights, the remedy is barred where limitations has run during the pendency of the defective suit." 281 Md. at 211–212, 378 A.2d 1100 (footnote omitted). Consequently, the Court held that, "in cases such as the one at bar where an action filed initially within the required period fails for some technical, procedural defect falling short of a full decision on the merits," 281 Md. at 211, 378 A.2d 1100, and limitations run during the pendency of that procedurally defective action, a second suit based on the same cause of action is properly dismissed.

The Court considered, but rejected, Walko's argument that the purpose of the statute of limitations was served because, it gave Burger Chef notice of its cause of action when it filed the motion to intervene, along with a complaint, almost identical to the one it ultimately filed. The Court recognized that "at first blush, *Bertonazzi v. Hillman, Adm'x*, 241 Md. 361, 216 A.2d 723 (1966), would appear to stand as authority for the broad proposition that under Maryland law the running of the limitations period is tolled by a procedurally defective action which is timely

---

6. By agreement of. the parties, the case filed in the Maryland District Court was transferred to the District of Columbia Court. *See* 281 Md. at 209 n. 1, 378 A.2d 1100.

filed." 281 Md. at 213, 216 A.2d 723. It determined, nevertheless, that special circumstances that existed in that case were not present in the case before it. 281 Md. at 214, 216 A.2d 723. It concluded, *"Bertonazzi* stands alone ... confined to the special circumstances which culminated in the filing of the suit in the wrong county." *Id.*[7]

In addition, the *Walko* Court relied upon policy considerations applicable to that case, which it determined, in any event, militated against permitting limitations to be tolled on the basis of the notice given in such a circumstance. As to that, the Court stated that, allowing a plaintiff to toll the statutes by filing a suit, later determined to be procedurally defective, would result in the effective postponement of the running of the statute of limitations for an indefinite period. Furthermore, it was satisfied that, on the facts there presented—when Walko's motion to intervene was denied the statute of limitations had not yet run, yet no separate, timely action was filed before limitations expired and no reason was given either for that omission or for the failure to file such action during the 60 days in which the motion to intervene was pending—Walko had not demonstrated the "ordinary diligence required of one seeking to toll the statute of limitations." 281 Md. at 215, 216 A.2d 723.

---

7. In *Bertonazzi,* suit was brought on March 14, 1963, in Baltimore County, for an injury that plaintiff sustained in March, 1962. Although suit was commenced well within the statute of limitations, it was in the wrong county, as defendant resided in Baltimore City, not Baltimore County. Bertonazzi's counsel verified that this occurred because he misread the map. Bertonazzi's counsel learned that defendant died some 44 days before the suit was filed and became "panic stricken" at the discovery, fearing that the suit might be barred by the six-month period within which to bring suit against a personal representative. Therefore, on July 18, 1963, he filed suit in Baltimore County against the personal representative, even though she qualified in Baltimore City. This all occurred within the required six-month period. On September 4, 1963, more than six months following qualification of the personal representative, a motion to quash for improper venue was granted. Within one or two hours, a new suit was filed in Baltimore City, but later dismissed because the six-month period had expired.

This Court has reached the identical result in a case in which the issue presented was whether the statute of limitations was tolled by the filing in the same court of a third party complaint, ultimately dismissed, involving exactly the same parties, the same facts and the same claims. *See Bennett v. Baskin & Sears,* 77 Md.App. 56, 549 A.2d 393 (1988).

The issue before us does not involve the broad proposition advanced by *Walko Corp.* and *Bennett.* And, while the action *sub judice* was, indeed, found to be procedurally defective and that was the effective cause of its dismissal, it is the timing of, and the circumstances surrounding, the dismissal that is of importance here. It is important also that the deficiency was corrected almost immediately upon its determination. Furthermore, any defect in the action existed when the action was filed. It follows, therefore, that when the panel chairman first ruled on appellant's motion to dismiss premised on that deficiency, the situation was no different than it was when he ruled on his second motion to dismiss. When the panel chairman ruled that the complaint, though defective, should not be dismissed because good cause had been shown for the failure strictly to comply with the statute, there was time remaining in the statute of limitations and, therefore, appellees could have refiled their complaint in full compliance with the statute. Viewed from this perspective, it would have been to appellees' advantage for the panel chairman correctly to have decided the issue because, then, they would have been able, by acting at that point, to immunize their claim from attack on procedural grounds.

Appellees relied on the panel chairman's ruling and did not refile their claim,[8] which, in its original form, continued

---

8. It is appropriate to recall that the Court of Appeals said in *Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982), referring to the running of limitations:

> When a statute of limitations specifies that a proceeding must be brought within a certain period of time, it is the failure of the party initiating the proceeding to act within that time frame which bars

to be processed in the arbitration forum. Appellant did not appeal the ruling, nor could he, since it was neither a final judgment, *see* Maryland Rule 2–601; Maryland Cts. & Jud. Proc.Code Ann. § 12–301; *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767 (1989), nor appealable as a "collateral order." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949); *Peat & Co. v. Los Angeles Rams*, 284 Md. 86, 92, 394 A.2d 801 (1978). In short, the case *sub judice* is factually distinguishable from *Walko* and *Bennett.*

We will hold that, under the circumstances here presented, the trial court quite properly granted appellees' motion to vacate. To do otherwise would result in the creation of the situation where the statute of limitations is "a shield for serious inequity." *Hosagai v. Kadota*, 700 P.2d 1327, 1331 (Ariz.1985). Although we expressly do not adopt the theory of equitable tolling, we do find its enunciation in *Burnett v. New York Central Railroad Company*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) and *Hosagai, supra* to be a useful framework which points the way to achieve this holding. *See also Fox v. Eaton Corp.*, 615 F.2d 716, 719–20 (6th Cir.1980); *Addison v. State*, 578 P.2d 941 (Calif.1978).

In *Burnett*, the plaintiff, injured in Indiana while in the course of his employment with New York Central Railroad, brought an action in Ohio, pursuant to the Federal Employer's Liability Act (FELA). While the Ohio court had jurisdiction of the action, it was an improper venue. Thus, on motion of the defendant, the State court action was dismissed. A short time thereafter—eight days—the plaintiff filed an identical action in the Federal District Court for the District of Ohio. That court dismissed it as untimely filed, the limitations period having run during the pendency of the State action. The 6th Circuit Court of Appeals affirmed and the Supreme Court, having issued certiorari, reversed.

---

the action. When a rule or statute says that an appeal must be filed within a stated period of time and the appeal is dismissed for failure to comply, it is the party entering the appeal who is guilty of delay.

Perceiving the issue of when limitations are tolled as "one 'of legislative intent whether the right shall be enforceable ... after the prescribed time,'" 380 U.S. at 426, 85 S.Ct. at 1053, quoting *Midstate Horticultural Company v. Pennsylvania Railroad Company*, 320 U.S. 356, 360, 64 S.Ct. 128, 130, 88 L.Ed. 96 (1943), the Court reviewed the purposes and policies underlying the limitations provisions in the FELA. It said:

Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to prevail over the right to prosecute them." ... Moreover, the courts ought be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights. Thus, this Court has held that an FELA action is not barred, though brought more than three years after the cause of action accrued, where a defendant misled the plaintiff into believing that he had more than three years in which to bring the action.... Moreover, it has been held that the FELA limitation provision is tolled when war has prevented a plaintiff from bringing his suit, even though a defendant in such a case might not know of the plaintiff's disability and might believe that the statute of limitations renders him immune from suit.... In such cases a plaintiff has not slept on his rights but, rather, has been prevented from asserting them.

Considerations in favor of tolling the federal statute of limitations in this case are similar to those leading to an extension of the limitation period in the cases mentioned

above. Petitioner here did not sleep on his rights but brought an action within the statutory period in a state court of competent jurisdiction. Service of process was made upon the respondent notifying him that petitioner was asserting his cause of action. While venue was improper in a state court, under Ohio law venue objections may be waived by the defendant, and evidently in past cases defendant railroads, including this respondent, had waived objections to venue so that suits upon nonresidents of Ohio could proceed in state courts. Petitioner, then, failed to file an FELA action in the federal court, not because he was disinterested, but solely because he felt that his state action was sufficient. Respondent could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that petitioner was actively pursuing his FELA remedy; in fact, respondent appeared specially in the Ohio court to file a motion for dismissal on grounds of improper venue. (Citations and footnotes omitted)

380 U.S. at 428–430, 85 S.Ct. at 1054–56. The Court concluded that "the humanitarian purpose of the FELA makes clear that Congress would not wish a plaintiff deprived of his rights when no policy underlying the statute of limitations is served in doing so" and held that "when a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit." 380 U.S. at 434–35, 85 S.Ct. at 1057–58.[9]

---

9. The plaintiff pointed out that Ohio had a saving statute which permitted the refiling of a complaint dismissed for procedural reasons, such as improper venue, within a specified time and argued that the FELA limitation provision be read to incorporate the Ohio saving statute. The Court rejected that argument on the grounds that it would create nonuniform periods of limitations in the several states. 380 U.S. at 432, 433, 85 S.Ct. at 1056, 1057. The Court was of the mind, however, that, to fail to hold that limitations were tolled under the circumstances there presented, would do even greater violence to the policies underlying the limitation provisions of the FELA.

*Hosagai* involved the sufficiency of service of process on a defendant in a wrongful death action. The defendant appealed from the jury verdict in favor of the plaintiff, challenging the effectiveness of the three methods the plaintiff used to serve process on him. The Court of Appeals held that all three methods were insufficient. The Supreme Court denied review. Eight days after the Supreme Court action, the plaintiff filed a new wrongful death action against the same defendant. That action was dismissed, on motion of the defendant, as time barred by the statute of limitations.

The Supreme Court of Arizona reversed. Although acknowledging that the Arizona legislature had not passed a general saving statute for civil actions, the Court recognized that it had a "legitimate interest in the procedural rules that govern lawsuits, especially to prevent such rules from becoming a shield for serious inequity," 700 P.2d at 1331, and recognized that "a court may under certain circumstances make narrow equitable exceptions to statutes of limitations." *Id.* Addressing the issue from the standpoint that equitable tolling should effectuate the policies and purposes underlying a particular statute of limitations, the Court relied upon *Burnett.* It then adopted a three prong test for determining whether, in a given case, a statute of limitations equitably should be tolled, the relevant factors of which are:

1. timely notice to defendant in filing the first claim;

2. lack of prejudice to defendant in gathering evidence to defend against the second claim;

3. reasonable and good faith conduct by the plaintiff in prosecuting the first action and diligence in filing the second action.

*Hosagai,* 700 P.2d at 1333.

Given the facts *sub judice,* the *Hosagai* analysis is persuasive. When the factors enunciated in *Hosagai* are applied to the instant facts, a clear result is mandated.

There can be no contention, but that appellant was given timely notice of appellees' claim. When appellees initially filed the claim with the Health Claims Arbitration Office, more than 12 months remained in the statute of limitations. Indeed, when the first motion to dismiss was filed, and denied, seven months still remained before expiration of the statute. The claim was dismissed more than 20 months after it was initially filed but only six months after the statute had run. It is obvious, therefore, that appellant was on notice, within the statute of limitations, of appellees' claim.

Immediately upon dismissal of the first claim, appellees filed a second claim with the Health Claims Arbitration Office. That claim was identical to the first, except that, when filed, it met *all* of the procedural requirements, *i.e.*, it contained the required certificate of a qualified expert. Since the only difference in the statements of claim was the attachment to the second, at the outset, of the required certificate, it follows that appellant was not prejudiced by being called upon to defend the second claim.

Finally, appellees acted reasonably, and in good faith, in prosecuting the first action beyond the statute of limitations, rather than filing a separate action prior to the expiration of the statute, and they diligently filed the second action. As previously indicated, when presented with a motion to dismiss for failure to comply with § 3–2A–04(b)(1), the panel chairman ruled that appellees had shown good cause for not having filed the required certificate within 90 days of the date the statement of claim was filed. Although a subsequent appellate decision proved that ruling wrong, the panel chairman was the decision maker entrusted with the authority and, presumably, the wisdom to decide the issue. When he did so, appellees could not be expected to second guess him and act as if they had not prevailed on the motion. On the contrary, it was reasonable that appellees would not refile their claim until they were told they had to—until the decision maker's ruling had been reversed. Until that occurred, their claim

before the Health Claims Arbitration Office remained a viable one. When the panel chairman granted the second motion to dismiss, appellees did not tarry for an unreasonable period of time before filing a new statement of claim in full compliance with the statute. In fact, they filed the second action on the same day that their first action was dismissed, thus acting promptly and diligently.

What occurred in *Hosagai* is similar to the situation *sub judice*. In both the instant case and *Hosagai*, a condition precedent to the proper maintenance of the action was at issue—in the instant case, whether a timely filing of a certificate of qualified expert was mandatory as a condition precedent to maintaining an action in the arbitration office, while in *Hosagai* the sufficiency of service of process on the defendant was at issue. In both cases, the decision maker, in the instant case the panel chairman and in *Hosagai*, the trial court, determined that the action was properly being maintained. In both cases, the initial determination was reversed. In both cases, the plaintiffs relied upon the correctness of the ruling by the decision maker and maintained the action consistent with that ruling.

Because to do otherwise would allow the statute of limitations to be used as a shield under circumstances in which it is clearly unjust and does not effectuate the purpose the statute is designed to vindicate, it is appropriate that a narrow exception be carved out in this case so that, consistent with the purpose of statutes of limitations, plaintiffs whose action fails for a procedural, technical defect, but who delayed in correcting the defect in reliance on the ruling of an authorized decision maker, are not forever barred from recovering against a defendant who has clear notice of the action and is not prejudiced by the plaintiff's prosecution of the action. This approach does not amount to the enactment of a savings statute, a decision which rests solely with the legislature. And, because it was the panel chairman's erroneous decision which accounts for the failure of appellees to have refiled their action before limitations had run, it is consistent with *Brodak* and its progeny,

*e.g. Williams v. Williams*, 71 Md.App. 9, 523 A.2d 1018 (1987); *Zorich v. Zorich*, 63 Md.App. 710, 493 A.2d 1096 (1985), in not applying the sanction of dismissal when the party against whom it would be applied is not at fault.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.