646 A.2d 1031

David M. WILLIAMS

v.

CHESAPEAKE PUBLISHING CORPORATION.

No. 1341, Sept. Term, 1993.

Court of Special Appeals of Maryland.

Aug. 31, 1994.

264

---

David M. Williams, Chestertown, for appellant.

David R. Thompson (Cowdrey, Thompson & Karsten, P.A., on the brief) Easton, for appellee.

Argued before BISHOP, GARRITY and FISCHER, JJ.

FISCHER, Judge.

Appellant, David M. Williams ("Williams"), appeals from a motion for judgment in favor of appellee, Chesapeake Publishing Corporation. Williams initiated this defamation action in the Circuit Court for Kent County and argues that the trial court was clearly erroneous in granting appellee's motion for

judgment at the end of appellant's case. We initially issued an unreported decision in this case on April 25, 1994. Subsequent thereto, appellant filed a motion for reconsideration. After consideration of that motion and the response thereto, we have concluded that the motion should be granted. We, therefore, withdraw our initial opinion and issue this opinion in its place.

## FACTS.

In May 1985, Williams circulated a letter, throughout Talbot County and among members of the Maryland Legislature, warning voters that the legislature was attempting to eliminate their constitutional right to elect state court judges.

In June 1985, Williams received a telephone call from Pat Emory, a reporter for appellee. Williams testified that the reporter said she intended to publish the letter in the newspaper, and she wanted some background information. The discussion centered around Williams' personal custody case pending in Talbot County, which had not been mentioned in the letter. Williams told the reporter that the custody dispute was based on false allegations of child abuse, and he outlined those allegations. Williams suggested that the reporter look at the court documents to verify that the allegations were false. Appellee published a story reporting on the telephone interview but did not publish the "Dear Voter" letter. Appellant contends that this article contained defamatory statements, including assertions that he had abused his child and committed assault and battery. In July 1985, appellant filed a defamation action in the United States District Court for the District of Maryland. This action was stayed pending proceedings in state court in appellant's underlying custody suit. In December 1990, the federal suit for defamation against appellee was dismissed for lack of jurisdiction. Appellant then refiled his defamation action against appellee in state court in January, 1991. Appellee moved to dismiss the action arguing that it was barred by the statute of limitations. This motion was denied on April 25, 1991.

On February 23, 1993, the trial court granted appellee's motion for partial summary judgment, determining that Williams is a public figure for purposes of this case. A jury trial ensued, and appellee's motion for judgment was granted after presentation of the plaintiff's case. The trial court ruled as a matter of law that the article, taken as a whole, was not defamatory; that, even taking the arguably defamatory paragraphs out of context, there was no proof that they were false; and that, assuming the article was defamatory and false, there was no evidence of actual malice.

## DISCUSSION

Before "a public figure may recover for defamation, clear and convincing evidence must establish that the statements in issue were: (1) defamatory in meaning; (2) false; and (3) made with 'actual malice.'" *Batson v. Shiflett,* 325 Md. 684, 722, 602 A.2d 1191 (1992). "A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Batson,* 325 Md. at 722–723, 602 A.2d 1191. The question of whether an article is defamatory is one of law to be determined by the court, and the article must be considered in its entirety. *Batson,* 325 Md. at 723, 602 A.2d 1191; *Hohman v. A.S. Abell Co.,* 44 Md.App. 193, 197, 407 A.2d 794 (1979). "If words are capable of more than one meaning or a defamatory meaning could be inferred, then the meaning to be attributed to them is a question of fact for the jury." *Batson,* 325 Md. at 723, 602 A.2d 1191. In addition, the test is whether the words, taken in their common and ordinary meaning, are capable of defamatory construction. *Bowie v. Evening News,* 148 Md. 569, 574, 129 A. 797 (1925). "A false statement is one which is not substantially correct. ... The burden of proving falsity is on the plaintiff; truth is not an affirmative defense." *Batson,* 325 Md. at 726, 602 A.2d 1191. " 'Actual malice,' ... is established by clear and convincing evidence that a statement is made 'with knowledge that it was false or with reckless disregard of whether it was

false or not.' " *Batson,* 325 Md. at 728, 602 A.2d 1191 (*citing New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

## I.

Appellee argues that this action is barred by the statute of limitations. "An action for ... libel, or slander shall be filed within one year from the date it accrues." Md. Code (1974, 1989 Repl.Vol.), § 5–105 of the Courts and Judicial Proceedings article. The newspaper articles that appellant claims are defamatory were published in June and July of 1985. Appellant filed this complaint on January 17, 1991. Appellant argues that Rule 2–101(b) saves him from dismissal. Rule 2–101(b) provides in pertinent part:

> [I]f an action is filed in United States District Court ... within the period of limitations prescribed by Maryland law and the foreign court enters an order of dismissal for lack of jurisdiction ... an action filed in this State within 30 days after the foreign court's order of dismissal shall be treated as timely filed in this State.

This provision of the rule became effective July 1, 1992. Appellant filed his state court action in January, 1991.

The issue of retroactivity of a statute was addressed by the Court of Appeals in *Washington Suburban Sanitary Commission v. Riverdale Fire Co.,* 308 Md. 556, 520 A.2d 1319 (1987), in which the Court recognized the general rule that "statutes are presumed to operate prospectively and are to be construed accordingly" and that "the presumption against retrospectivity is rebutted only where there are clear expressions in the statute to the contrary." *WSSC,* 308 Md. at 560–561, 520 A.2d 1319.

The Court also discussed its decision in *Janda v. General Motors Corp.,* 237 Md. 161, 205 A.2d 228 (1964), which involved a statute with terms clearly reflecting a retroactive intent. In *Janda,* 237 Md. at 168, 205 A.2d 228, the Court stated the "[v]arious rules ... formulated ... to aid in determining whether a statute is to be applied retrospectively or

prospectively." The Court expounded on those rules as follows:

(1) 'Ordinarily a change affecting procedure only, and not substantive right, made by statute (and an amendment of the Maryland Rules has essentially the same effect) applies to all actions [and matters] whether accrued, pending or future, unless a contrary intention is expressed.'

(2) Ordinarily a statute affecting matters or rights of substance will not be given a retrospective operation as to transaction, matters and events not in litigation at the time the statute takes effect:

' * * * unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified. * * * (citing cases). An amendatory Act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, unless an intent to the contrary is expressed in the Act or clearly implied from its provisions.'

(3) A statute, even if the Legislature so intended, will not be applied retrospectively to divest or adversely affect vested rights, to impair the obligation of contracts, or so as to violate the due process clause, or to operate as a bill of attainder or an *ex post facto* law.

(4) A statute which affects or controls a matter still in litigation when it became law will be applied by the court reviewing the case at the time the statute takes effect although it was not yet law when the decision appealed from was rendered, even if matters or claims of substance (not constitutionally protected), as distinguished from matters procedural or those affecting the remedy are involved, unless the Legislature intended the contrary....

The various categories of matters procedural or those concerning the remedy, and matters of substance, vested or accrued, or not vested or accrued, as well as rights protected by the due process clause, tend to overlap in many

instances and are not always easy to accurately recognize or to delineate or define in a given instance.

*Janda,* 237 Md. at 168–170, 205 A.2d 228 (citations omitted). The fourth rule in *Janda* was subsequently disapproved by the Court of Appeals. *WSSC,* 308 Md. at 565, 520 A.2d 1319.

■ Where the effect of a statute of limitations is not to obliterate existing substantial rights, but it affects only the procedure for enforcement of those rights, the statute of limitations applies to all actions whether accrued, pending, or future, unless contrary intention is expressed. *Janda,* 237 Md. at 168, 205 A.2d 228.

■ "A statute of limitations affects only the remedy, not the cause of action," *Waddell v. Kirkpatrick,* 331 Md. 52, 59, 626 A.2d 353 (1993), and, therefore, the question of limitations is generally procedural. *Turner v. Yamaha Motor Corp.,* 88 Md.App. 1, 591 A.2d 886 (1991). In addition, a savings statute is remedial in nature. *See Herring v. Offutt,* 266 Md. 593, 599, 295 A.2d 876 (1972).

In *Bertonazzi v. Hillman,* 241 Md. 361, 367, 216 A.2d 723 (1966), the Court of Appeals addressed a similar situation that existed prior to the promulgation of Rule 2–101(b). The Court quoted the Supreme Court's holding in *Burnett v. New York Central R. Co.,* 380 U.S. 424, 430, 85 S.Ct. 1050, 1055, 13 L.Ed.2d 941 (1965):

'Both federal and state jurisdictions have recognized the unfairness of barring a plaintiff's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run. In both federal and state systems of justice rules have been devised to prevent this from happening.'

*Bertonazzi,* 241 Md. at 367, 216 A.2d 723. The *Bertonazzi* Court continued:

The saving statutes of most of the states which utilize this device provide that if an action is 'commenced' within good time but is defeated by some technicality unrelated to the merits, a new action may be brought within a certain

specified time, usually six months or a year, and that the second action is to be treated as a continuation of the first, the effect being that the original statute of limitations is tolled by the first suit, ineffectual to avoid dismissal as it was. The cases in these states hold with uniformity and in increasing numbers that an action is deemed to be 'commenced' even though the venue was improper or the court lacked jurisdiction, the holdings having been made in cases of ordinary limitations statutes, contractual limitations periods and cases where the period of limitations is part of the right.

*Bertonazzi*, 241 Md. at 368–369, 216 A.2d 723.

Upon adopting the applicable amendment to Rule 2–101, the Court of Appeals provided that the rule "shall take effect and apply to all actions commenced on or after July 1, 1992 and insofar as practicable, to all actions then pending."

■ Notwithstanding this Court's statement in *Baker v. Miles & Stockbridge*, 95 Md.App. 145, 196 n. 16, 620 A.2d 356 (1993), that Rule 2–101(b) acts prospectively, it is clear that, because the rule is procedural in nature, it acts retrospectively as well and should apply to this case. The claim, therefore, was not barred by the statute of limitations.

## II.

■ Because we are reviewing the granting of a motion for judgment, we must review the evidence in the light most favorable to Williams, the non-moving party. Williams points to five paragraphs in the newspaper articles that he believes are defamatory. The paragraphs complained of are as follows:

Paragraph 8: 'You wouldn't think they could take my kid away from me for non-existent child abuse,' he said.

Paragraph 9: Child abuse is not mentioned in the letter. It also doesn't mention that Williams allegedly bruised the girl when he grabbed her, that he threw a chair at her or that he threw her against the wall, all of which he says is true.

Paragraph 10: 'I hurt her a little,' Williams admitted in a recent telephone interview.

Paragraph 11: A school psychologist describes the child as having 'intense dislike and frustration concerning her father.'

Paragraph 13: Also unmentioned in Williams' letter are accusations of physical abuse, drunkenness and temper fits, accusations made in court by two wives and Williams' daughter. Williams says the charges were fabricated or occurred long ago.

In his opinion, the trial judge stated that paragraphs 9 and 10 are arguably defamatory but that it is true that child abuse is not mentioned in Williams' letter. The trial judge continued, "[W]hen one looks at the context, or the article as a whole, the article is about the letter which was written, and it refers to the case.... It is clear when you read the article as a whole Mr. Williams denied any abuse of his child." The judge believed that, when read in combination with paragraph 8, paragraphs 9 and 10 were not defamatory. Specifically, the judge noted that paragraph 9 did not allege a crime of child abuse, and it is clear that Williams denied any abuse of his child.

▮ Keeping in mind the standard that a trial judge is to use in a motion for judgment, reasonable readers of the article could have concluded that Williams was guilty of child abuse. The statements in paragraph 8 may have been enough to neutralize the statements that followed, but we cannot agree with the trial judge that the article was not defamatory as a matter of law.

In addition, there is evidence from which a reasonable factfinder might determine that the statements in the article were false. With respect to paragraph 9, Williams testified that it was true that the child abuse was not mentioned in the letter because the allegation was investigated and was unfounded. In addition, Williams testified that, while paragraph 9 states that he admitted bruising the child, throwing a chair at her and throwing her against a wall, he did in fact deny the

statements and suggested that the reporter look at the court documents to verify his answers. Williams testified that, with respect to paragraph 10, his statement was that he hurt his daughter's feelings when he disciplined her. With respect to paragraph 11, Williams testified that the paragraph was inaccurate and that the psychologist's reports in the case file indicated that her mother was unfit for custody. With respect to paragraph 13, Williams admits to the statement but also testified that he told the reporter that the allegations were ruled unfounded at an earlier proceeding.

The trial judge also concluded that Williams did not sufficiently prove actual malice. Williams presented evidence from which a factfinder might determine that there was actual malice. Williams testified that he believed the letter, in reference to the election of state court trial judges, was going to be printed along with the article and that he only agreed to the interview with the understanding that the letter would be printed. Williams also testified that the reporter had reason to know that statements made in the article were false.

■ We are not rendering an opinion on whether we believe that the article was, in fact, defamatory. Rather, we are simply holding that the trial judge erred in granting appellee's motion for judgment at the end of appellant's case. The matter should have been submitted to the jury for its determination. In fact, we strongly recommend that, whenever reasonable, trial judges obtain a jury verdict and subsequently, if they believe it is warranted, enter a judgment *non obstante veredicto*. Had that been done in the instant case, and had a verdict for the appellant been returned by the jury, we could now, if otherwise appropriate, reinstate that verdict.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR KENT COUNTY.

COSTS TO BE PAID BY THE APPELLEE.