617 A.2d 1134

**OHIO CASUALTY INSURANCE COMPANY,**

v.

**Mark B. HALLOWELL, Personal Representative of the Estate of Alma Lee Auguste.**

**No. 409, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Jan. 7, 1993.

Walter Allen Pennington, Washington, DC, for appellant.

Jeffrey P. Buhrman (Thomas Waxter, Jr. and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellee.

Argued before BISHOP, CATHELL and MOTZ, JJ.

CATHELL, Judge.

Ohio Casualty Insurance Company (Ohio), appellant, filed an untimely claim in the Orphans' Court of Howard County against Mark B. Hallowell, Personal Representative of the Estate of Alma Lee Auguste (Estate), appellee. The orphans' court denied Ohio's claim on limitations grounds. Ohio appeals that decision and also appeals the decision of the orphans' court awarding legal fees to the attorney for the Estate and to the attorney for the legatees. Appellant presents four questions, which we restate as follows:

I. Whether a claim against an estate can be barred when the personal representative fails to send a notice to reasonably ascertainable creditors as demanded by the Estates and Trusts Article, Section 7–103.1.

II. Whether a claim can be disallowed by an Orphans' Court when the personal representative waives the defense of statute of limitations in a contract.

III. Whether both the attorney representing residuary legatees and an attorney representing an estate are entitled to attorneys' fees from an estate pursuant to Estates and Trusts Article, Section 7–602, for parallel representation.

IV. Whether the Orphans' Court may award attorney's fees when the petition for attorney's fees fails substantially to meet the criteria of Maryland Rule 6–416.

## FACTS

John L. Auguste and Alma L. Auguste were married. Mr. Auguste was the president and majority owner of an electrical contracting company, Auguste Electrical Service, Inc. (Contractor). Ohio issued two payment bonds to Contractor on or about the 28th of March, 1988. As a part of that transaction, Ohio received John and Alma Auguste's agreement to indemnify Ohio in respect to the bonds.

Thereafter, Contractor experienced difficulties in paying two suppliers for materials used in the projects covered by the payment bonds and by the agreement of indemnity. Alma Auguste died on January 28, 1990. Approximately one month later, on February 28, 1990, the suppliers, Ohio, Contractor, and John Auguste, individually and as personal representative for the Estate, negotiated a forbearance agreement (Agreement) that included a scheduling of payments to the two suppliers in return for their promise to forbear making immediate demand for payment. With respect to the issue before us, the Agreement stated that the Contractor, John Auguste, and the Estate agreed to an extension of the applicable statute of limitations as it applied to Ohio until three years after each date a payment was made by Ohio. At the time of the execution of the forbearance agreement, John Auguste had not been appointed as personal representative. That appointment occurred twenty to thirty days thereafter.

After Mrs. Auguste's death and the execution of the forbearance agreement, Ohio was required to pay under the bonds. Subsequently, on June 13, 1991, Ohio filed a claim against the Estate based on Mrs. Auguste's obligation under the indemnification agreement. The statute then in effect required claims against the Estate to be filed within nine months after the decedent's death, or in the case *sub judice* by October 28, 1990.[1] Md.Code Ann., Est. & Trusts § 8–103(a)(1) (1991). As we have said, the orphans' court

---

1. As of October 1, 1992, this period was reduced to six months. Md.Code Ann., Est. & Trusts § 8–103(a)(1) (1991 & Supp.1992).

denied the claim because it was filed after the nine-month period contained in the statute for the filing of such claims.

### I.

### WHETHER A CLAIM CAN BE BARRED WHEN REQUIRED NOTICE IS NOT MADE TO CREDITORS.

■ Section 7–103.1(a) of the Estates and Trusts Article [2] requires a personal representative to notify known creditors of the time within which claims can be filed against the estate. Paragraph (c) provides, however, that if notice is not received, then the time for filing a creditor's claim is *not* extended beyond nine months and that the personal representative is not liable to any person to whom notice is not given.

Appellant argues that this notice provision denies it due process under the Fourteenth Amendment of the United States Constitution. It relies primarily on *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). That reliance, we believe, is misplaced. The statutory provision attacked in *Tulsa* was not the type of provision applicable in the case at bar. The Maryland law provides that claims will be barred "unless presented within the earlier of the following dates:

(1) Nine months after the ... decedent's death; or

(2) Two months after the personal representative ... delivers to the creditor a copy of a notice ... notifying the creditor that his claim will be barred unless he presents the claim within 2 months...."

§ 8–103(a). The statute at issue in *Tulsa* was similar, not to section 8–103(a)(1), but to section 8–103(a)(2), which is not at issue here. In the case *sub judice*, no notice was given to Ohio. Thus, its claim, unless otherwise preserved, was

---

2. Unless otherwise noted, all statutory references are to the sections of the Estates and Trusts Article of the Annotated Code of Maryland (1991).

barred by paragraph (a)(1), which requires no official action and automatically bars claims filed more than nine months after a decedent's death. We explain the distinction by reviewing *Tulsa* and *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982).

*Short*[3] involved an Indiana statute providing that a severed mineral interest not used for a period of twenty years automatically lapses and reverts to the owner of the fee, unless the mineral owner preserves the interest by filing a claim within two years after the twenty-year lapse. 454 U.S. at 518–19, 102 S.Ct. at 786–87. The statute does not require that any specific notice be given to the mineral owner prior to a statutory lapse, although it does set out a procedure for giving notice to the owner of the mineral interest after a lapse. *Id.* at 520, 102 S.Ct. at 787. After noting that the trial court had ruled the statute unconstitutional, the Supreme Court recited in a footnote that the Indiana Supreme Court had distinguished *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), "on the ground that these cases set forth notice requirements for adjudicatory proceedings, and not for a self-executing statute that uniformly affected all parties within the State." 454 U.S. at 524 n. 14, 102 S.Ct. at 789 n. 14.

In *Short,* the Supreme Court noted that the mineral owners asserted two claims in support of their argument that the statute denied them due process of law. *Id.* at 531, 102 S.Ct. at 793. They contended that the state had not adequately notified them of the legal requirements of the statute and that their interests could not be extinguished unless they were given prior notice that the lapse period was about to expire. The Supreme Court rejected both arguments. As to the former, it opined:

Generally, a legislature need do nothing more than enact and publish the law.... It is well established that per-

---

**3.** *Short* was a five-to-four decision.

sons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property.

*Id.* at 532, 102 S.Ct. at 793 (footnote omitted). As to the latter argument, the Court said that it is "essential to recognize the difference between the self-executing feature of the statute and a subsequent judicial determination that a particular lapse did in fact occur." *Id.* at 533, 102 S.Ct. at 794. The Court stated:

> The reasoning in *Mullane* is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur, but not to the self-executing feature of the ... Act. The due process standards of *Mullane* apply to an "adjudication" that is "to be accorded finality." ... [B]ut it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights.

*Id.* at 535–36, 102 S.Ct. at 794–96.

In *Tulsa,* 485 U.S. at 482, 108 S.Ct. at 1343, the assignee of a creditor filed a claim against an estate after the two-month period for the filing of the claim had expired. In reviewing the lower court's ruling that due process was not implicated, the Supreme Court opined:

> The Fourteenth Amendment protects this interest, however, only from a deprivation by state action. Private use of state-sanctioned private remedies or procedures does not rise to the level of state action. Nor is the State's involvement in the mere running of a general statute of limitations generally sufficient to implicate due process. But when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found. The question here is whether the State's involvement with the nonclaim statute is substantial enough to implicate the Due Process Clause.

*Id.* at 485–86, 108 S.Ct. at 1344–45 (citations omitted).

The Court then opined that "due process does not require that potential plaintiffs be given notice of the impending

expiration of a period of limitations," but, nevertheless, held that Oklahoma's statute was not a self-executing statute of limitations. *Id.* at 486, 108 S.Ct. at 1345. The Court reached this conclusion based on its determination that under the Oklahoma statute there was significant state action. Id. at 487, 108 S.Ct. at 1346.[4]

The Court described significant state action as follows: ■ The nonclaim statute becomes operative only after probate proceedings have been commenced in state court. ■ The court must appoint the executor or [personal representative] before notice, which triggers the time bar, can be given. [3] Only after this court appointment is made does the statute ... direct[ ] the executor ... to publish notice.... [4] Finally, copies of the notice and an affidavit of publication must be filed with the court.

*Id.* The Court noted that the two-month period did not commence running until all of the above requirements had been met. *Id.* The Court then held that because the court's involvement was "pervasive and substantial," the Oklahoma statute required significant state action thereby triggering the Fourteenth Amendment. *Id.* The Court further stated:

Where the legal proceedings themselves trigger the time bar, even if those proceedings do not necessarily resolve the claim on its merits, the time bar lacks the self-executing feature that *Short* indicated was necessary to remove any due process problem.

*Id.* The Court then noted that it had no "occasion to consider the proper characterization of nonclaim statutes that run from the date of death, and which generally provide for longer time periods, ranging from one to five years." *Id.* at 488, 108 S.Ct. at 1346.

---

4. The Court of Appeals in a footnote in *Golden Sands Club Condominium, Inc. v. Waller,* 313 Md. 484, 488 n. 4, 545 A.2d 1332 (1988), cited *Tulsa* for its holding that "the party asserting unconstitutionality must show that (1) State action has been employed...." (Citations omitted.)

As stated earlier, the statutory provision at issue here provides that the bar runs automatically from the time of death. The state court is not "intimately" involved. In fact, no action by the state court is necessary to activate the time bar. It is not dependent on the opening of an estate, the appointment of a personal representative, the providing of notice, or the filing of notice. Death commences the running of the period of time and the passing of that period, regardless of state action. Accordingly, we conclude that the statute at issue here is a self-executing limitation statute. Thus, due process concerns are not implicated, and the statute is not unconstitutional.

## II.

### WHETHER THE TIME FOR FILING CLAIMS WAS EXTENDED BY THE PERSONAL REPRESENTATIVE.

#### A. Authority of John Auguste.

As we have indicated, John Auguste acted for the Estate and himself in entering into the forbearance agreement in which he agreed that the period for the filing of claims by Ohio was to be extended to three years after Ohio was required to make payments under the bonds. All the parties to the forbearance agreement knew that Mrs. Auguste was deceased because it included her estate as a party.[5] All the parties agree that John Auguste had not yet been appointed as her personal representative at the time of the Agreement.

Several provisions of the Estates and Trusts Article are relevant to the present issue. Section 5–102(b) provides that "a person may not qualify as or exercise the powers

---

5. It might well be that the forbearance agreement was precipitated by her death because all the parties wanted to protect their respective interests in view of the fact that a new statute of limitations became part of the problem affecting a workout of the two projects involved. We can only speculate as the record is unclear as to the precipitating factor.

and duties of a personal representative unless he has been appointed administratively or judicially." Section 5–301 defines administrative probate as commencing with the filing of a petition with the register "for the probate of a will or a determination of the intestacy of the decedent, and for the appointment of a personal representative." Judicial probate is defined in section 5–401 as commencing with the filing of a petition with the court "for the probate of a will or a determination of the intestacy of the decedent, and for the appointment of a personal representative." It is conceded in the case *sub judice* that no estate had been administratively or judicially opened, and that at the time of the alleged waiver no personal representative existed.

Nevertheless, section 6–105(a) provides that normally the duties and powers of a personal representative do not commence until he has been appointed, but "when done in good faith, his acts occurring prior to appointment have the same effect as those occurring after." As we have said, the deceased indemnified Ohio on the payment bonds. By such action she had, while alive, a contingent liability. Section 8–112 acknowledges the liability of estates for contingent claims against the deceased by providing for a method to secure funds for the payment of such contingencies. Section 7–401(h) expressly provides that a personal representative may "effect a fair and reasonable compromise with a creditor or obligee, or *extend* or renew an obligation due by the estate." (Emphasis added.) Section 7–401(u) provides that a personal representative may "perform the contracts of the decedent that continue as obligations of the estate...." [6]

---

6. Appellee attempts to argue that a "contingent" obligation is not "due." Thus, according to him, section 7–401(h) is not applicable. First, we note that while a sum may not have been due the *obligation* to indemnify existed from the execution of the indemnification agreement. Section 7–401(u) authorizes a personal representative to perform the contracts of the estate. We further note that the matters that were the subject of the settlement negotiations in *Chandlee, infra,* and at issue in *Geisz, infra,* involved the possibility (*i.e.,* contingency) of obligations and/or causes of actions for recovery. As such, they were

Appellee does not deny that section 6–105 makes provision for personal representatives to act for and bind an estate prior to their appointment. Appellee emphasizes, however, that the language of section 6–105 requires such acts committed by a personal representative to be done in good faith. Appellee then argues that because the Agreement benefited John Auguste, it was not entered into in good faith.

Appellee also incongruously argues that additional evidence of bad faith is to be found in appellant's assertions that the forbearance agreement waived the limitations period because it induced Ohio not to file its claim within the period. Appellee equates inducement to Ohio as bad faith towards the Estate. At best, that attempt by appellee is a contradiction in terms. We shall not attempt to follow appellee's reasoning on that point.

As we construe the relevant sections, it is clear that the statute authorizes a personal representative to "extend" a claim as John Auguste did in the case at bar. §§ 7–401(h) and 7–401(u). It is also clear that his actions in executing the Agreement were to forestall claims against the Estate as well as against himself; thus, benefitting the Estate and himself equally.

Alma Lee Auguste executed the indemnification agreement on March 28, 1988. That agreement clearly obligates both husband and wife to indemnify Ohio Casualty for any sums it is required to pay on the bonds. Thereafter, on July 25, 1988, with full knowledge of her contingent obligations shared jointly with her husband, she named him to be her personal representative and authorized him to pay all her "just debts." In *Goldman v. Rubin*, 292 Md. 693, 441 A.2d 713 (1982), the parties conceded that the personal

contingent. We primarily rely herein on the concepts of estoppel we discuss *infra* in relation to those cases. In any event, as we perceive the statutes—sections 7–401(h) and 7–401(u)—they apply to obligations, contractually or otherwise incurred, whether or not *payment* is due under the obligations and whether that obligation is contingent *or* finalized.

representative had a conflict of interest created by the will. The Court stated: "Here the personal representatives are not the ones who placed themselves in a position of conflict. They were placed in that position by [the decedent], through the provisions of his will." *Id.* at 708, 441 A.2d 713. The decedent in the case *sub judice* is presumed to have known that if she satisfied the obligation arising out of the indemnification, it would benefit her husband. With this knowledge, she placed him in the position to administer her estate and thus, in a position to benefit himself as well as the Estate. In *Goldman*, the Court said:

> The question then is whether divided loyalty ... constitutes a breach of duty in and of itself. We think not. The selection by [the decedent] of directors and officers of MRI to be his personal representatives ... so that [they] ... were "authorized to take action which might, under other circumstances, constitute a conflict between [their] ... fiduciary capacity."
>
> Other courts, faced with analogous situations, have not treated conflicts intended by the testator as breaches of trust.

*Id.* at 709–10, 441 A.2d 713 (citation omitted). The Court, while limiting its holding, nevertheless opined that:

> [T]he burden of proof on the issue of breach of trust is not initially on the fiduciary, because there is no presumption against the fiduciary based on his acting, *despite divided loyalty,* in the intended transaction.

*Id.* at 713, 441 A.2d 713.

Though it benefited John, the Agreement at the time it was executed, on its face, also benefited the Estate. It was a compromise agreement between the parties expressly contemplated by section 7–401(h). We hold that the Agreement was "a fair and reasonable compromise with a creditor," that it was made in good faith, and that pursuant to section 6–105 it is binding upon the Estate.

B. Waiver of the Statute of Limitations.

 The seminal case on the issue of waiver of limitations is the personal injury case of *Chandlee v. Shockley*, 219 Md. 493, 150 A.2d 438 (1959), in which a predecessor statute was involved.

In *Chandlee*, after being asked whether the personal representative would rely on a limitation defense if settlement negotiations extended past the deadline for filing claims, the personal representative's agent allegedly told the claimant's attorney: "We will not take any more advantage of you than I know you will take of us. My company does not work that way." *Id.* at 495, 150 A.2d 438. Later, he again asserted that he would not take advantage of the delay, saying: "[Y]ou can take my word for it that there is no reason for you to file suit." *Id.*

When suit was ultimately filed, the estate demurred on the grounds that the suit had not been commenced within the limitations period under Annotated Code of Maryland Article 93, section 112 (1957, repealed and reenacted 1974 in Estates and Trusts Article), and it further alleged that the limitation period prescribed by the statute could not be waived by a personal representative. *Id.* at 495–96, 150 A.2d 438. The Court held

> that an executor or administrator against whom a claim is asserted by virtue of Code, 1957, Art. 93, Sec. 112, may waive or be estopped to rely on the time limit of the statute. This construction ... does no violence to its purpose to permit personal representatives to make prompt settlement of estates without liability for claims not timely filed or asserted since the executor or administrator necessarily must know of and induce the late suit thereon within the statutory period.

*Id.* at 502, 150 A.2d 438. *Cf. Markert v. Beatley*, 84 Md.App. 594, 581 A.2d 445 (1990) (reversing lower court's application of statute of limitation in caveat proceeding where there were allegations of fraud and undue influence).

In *Geisz v. Greater Baltimore Medical Center*, 313 Md. 301, 545 A.2d 658 (1988), the reasoning of *Chandlee* was persuasive as to the issue of estoppel regarding the substantive limitations period in an interpretation of the wrongful death statute. The Court reiterated a quote from *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253 (4th Cir.1949), *cert. denied*, 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343 (1950) (citation omitted):

> We cannot see a distinction ... between the two classes of statutes of limitations—the remedial and the substantive—as to justify the courts in fully giving effect to fraud in tolling the statute in one type (remedial) and then flatly denying that effect ... in the other type (substantive).

*Geisz*, 313 Md. at 323, 545 A.2d 658. The Court concluded: "Just as an estoppel based on assurances of payment operated to toll the substantive limitations period involved in *Chandlee*, so an estoppel based on fraud or fraudulent concealment ... operates to toll the substantive limitations period in the wrongful death statute...." *Id.* at 325, 545 A.2d 658 (citation omitted, footnote omitted).

The Court of Appeals relied on *Chandlee* once again in the workman's compensation case of *Bayshore Industries, Inc. v. Ziats*, 232 Md. 167, 192 A.2d 487 (1963). The employer had told the employee that if she filed a claim "you will be sorry. You will never work here again and probably no where around here any more." *Id.* at 170, 192 A.2d 487. The Court opined:

> Here we have a deliberate attempt to evade ... the purpose of the Act made effective ... by a statement ... which combined a threat and an inducement upon which the claimant relied. Such conduct ... falls within the meaning of "facts and circumstances amounting to an estoppel"....

*Id.* at 179, 192 A.2d 487.

In *Sole v. Darby*, 52 Md.App. 218, 220, 447 A.2d 506 (1982), the Register of Wills, acting on behalf of the personal representatives, published a notice of appointment stat-

ing that objections had to be filed "on or before March 3, 1980 (6 months from the date of such appointment)...." The specific date given, March 3rd, was incorrect. It was four days past the six months provided by statute. Sole filed a caveat by March 3. The orphans' court rejected the caveat as barred by limitations. Relying on *Chandlee* and *Bertonazzi v. Hillman*, 241 Md. 361, 216 A.2d 723 (1966), we reversed, saying:

[W]e see no reason why the principles enunciated in those cases do not equally apply to § 5–207(a) of the Estates Article....

... While we agree ... that the six month period of limitation ... is mandatory under normal circumstances, we do not agree that in a case such as the one at bar, the rigid adherence to its terms is mandated.

... [U]nder the circumstances of this case the principles of waiver and estoppel do apply in that the personal representatives gave the caveator an ambiguous notice upon which she relied to her detriment.

*Id.* at 223–24, 447 A.2d 506.

There are cases in which waiver claims have not been upheld. In *Cornett v. Sandbower*, 235 Md. 339, 201 A.2d 678 (1964), the appellant argued that a waiver had occurred because in another suit against the Estate, as a result of negotiations that had taken place with the decedent's insurer and appellee, letters of administration were issued and the personal representative had failed to file a notice to creditors as required by statute. The Court opined:

In the instant case, however, there is no indication that the delay in filing suit was induced by any action of the appellee.... [T]here is nothing in the record to show that the insurer held out any inducement not to file suit or indicated in any way that limitations would not be pleaded.... While ... no notice to creditors was published, these facts are not controlling. The appellee's motive in taking out letters would not prevent the appellant from proceeding against him, had he done so within the time proviso of the statute. Also, while no notice to creditors

has been given, Art. 93, sec. 112, provides that suit must be filed within six months after the qualification of the administrator,[7] not after the publication of notice to creditors. It is the appointment and qualification of the administrator which brings into existence a party capable of being sued.

*Id.* at 342–43, 201 A.2d 678 (citation omitted).

Other cases distinguish *Chandlee* primarily on the grounds of lack of evidence of fraud or estoppel, or lack of evidence of the existence of representations that limitations would not be pled. *See Leonhart v. Atkinson,* 265 Md. 219, 228, 289 A.2d 1 (1972); *Jordan v. Morgan,* 252 Md. 122, 132, 249 A.2d 124 (1969); *Dixon v. Checchia,* 249 Md. 20, 27, 238 A.2d 247 (1968); *MacBride v. Gulbro,* 247 Md. 727, 731, 234 A.2d 586 (1967); *Bertonazzi v. Hillman,* 241 Md. 361, 365, 216 A.2d 723 (1966); *Johns Hopkins Hosp. v. Lehninger,* 48 Md.App. 549, 568–70, 429 A.2d 538, *cert. denied,* 290 Md. 717 (1981). *See also Burket v. Aldridge,* 241 Md. 423, 430, 216 A.2d 910 (1966) (holding that both the three-year statute of limitations and the six-month period under former Article 93, section 112 can be waived).

Although the nine-month statute of limitations (now six months) applies even in the absence of notice, the cases hold that it can be waived if there is sufficient evidence of inducement, estoppel, fraud or waiver. In the case at bar, the parties entered into an express agreement extending the limitation period. In doing so, the period was waived.

We hold that personal representatives may waive the application of the statute of limitation. When the orphans' court denied appellant's claim, it erred. We shall reverse.

---

7. The current statute in section 7–103.1 provides that failure of a creditor to receive notice does not extend the time in which a creditor may present his claim. Section 8–103 requires claims to be filed by the earlier of six months after decedent's death or two months after the personal representative delivers or mails a notice to the creditor. The statute in effect at the time the issue arose in the case at bar required claims to be filed within nine months of death.

## III AND IV

## ATTORNEYS' FEES

In the case *sub judice,* appellant asked for a hearing on the matter of attorneys' fees pursuant to Maryland Rule 6–416. Rule 6–416(e) provides in pertinent part that, when exceptions to payments of attorneys' fees are made by an unpaid creditor or interested party, the orphans' court *"shall* hold a hearing if requested...."

Apparently, because the orphans' court believed that Ohio was neither an unpaid creditor nor an interested party, it denied Ohio a hearing. Because it erred in finding that Ohio was barred by limitations, it also erred in its resolution of Ohio's exception to the granting of the attorneys' fees without a hearing.

As we shall reverse the orphans' court on this matter as well, we choose not to address the appropriateness of the amount of the fees and the matter of the awarding of fees to attorneys representing the legatees. We note briefly, however, the statement by the Court of Appeals in *Clark v. Rolfe,* 279 Md. 301, 305–06, 368 A.2d 463 (1977): "[O]ur cases indicated that in a *rare* instance, an orphans' court may, in its discretion, allow a fee to counsel for an interested party who acts to protect or enhance the estate and not to advance the interest of his client...." (Emphasis added.)

JUDGMENT OF THE ORPHANS' COURT DENYING APPELLANT'S CLAIM REVERSED; ORDERS AWARDING ATTORNEYS' FEES REVERSED; COSTS TO BE PAID BY APPELLEE.