702 A.2d 977

Cheryl CHAPMAN, Personal Representative of the
Estate of Henry Norman Cole, II, et al.

v.

Marie KAMARA, Individually, etc.

No. 642, Sept. Term., 1997.

Court of Special Appeals of Maryland.

Dec. 2, 1997.

420

Thomas Fortune Fay (David J. Perrone, on the brief), Washington, DC, for Appellants.

Don C.A. Parker (Robert L. Polk and Robert J. Kniaz, on the brief), Washington, DC, for Appellees.

Argued before WENNER, EYLER and THIEME, JJ.

THIEME, Judge.

This appeal is but one episode in continuing litigation over a tragic automobile accident. The entire scope of the controversy is somewhat complex, but the issues before us in this appeal are relatively few and narrowly drawn. Appellants moved to vacate a judgment against them in the Circuit Court for Prince George's County (Spellbring, J.), and appellee Washington Metropolitan Area Transit Authority (WMATA) moved to intervene in order to oppose the motion to vacate. The court granted the motion to intervene and denied the

motion to vacate. This timely appeal ensued, and the appellants raise the following issues for our review:

(1) Whether WMATA had a justiciable interest in the friendly suit below such as permitted intervention in the action for the purpose of opposing the Motion to Vacate the Judgment?

(2) Whether, in the absence of a justiciable interest on the part of WMATA, the judgment should have been vacated as requested by defendants and consented to by the plaintiffs?

(3) Whether, in the absence of any service upon her or notice to her of the proceedings, Renee Cole is entitled to have the judgment against her set aside?

(4) Whether the entry of appearance of an attorney on behalf of an Estate not yet in existence is valid, permitting relief [to] be [granted] against the estate?

For the reasons set forth herein, we affirm.

### FACTS

The case arises out of an automobile accident on 11 October 1991 in which a van carrying eight young men collided with a telephone pole. The driver of the van, Henry Norman Cole, II, was seriously injured, and he died as a result of those injuries about fourteen months later. The other seven passengers survived, some sustaining serious injuries and some incurring substantial medical bills. Two of these other seven passengers were teen-aged minors: Arouna Koroma and Russell Cole, the latter of whom is also the brother of the deceased driver, Henry Norman Cole. The van was owned by the two Coles' stepmother, Renee Cole, and she insured the van for up to $100,000 under a policy with Government Employees Insurance Company (GEICO).

On 23 December 1993, the instant suit was filed. The appellants characterize the suit as a "friendly" suit, brought for the sole purpose of binding two minors to a global settlement agreement with GEICO for the monetary limits of the insurance policy. Although appellees do not seriously contest

the accuracy of this characterization, they are correct to point out that it assumes facts not in the record. The record does show that the two plaintiffs are the parents of the two injured minors. Plaintiff Marie Kamara sued in her individual capacity and as the next friend of her son, Koroma; plaintiff Reverend Henry Norman Cole, Sr. (hereinafter, Reverend Cole, to distinguish him from his deceased namesake son), sued in his individual capacity and as the next friend of his son, Russell Cole. The two defendants are Renee Cole and the Estate of Henry Norman Cole, II ("the Estate").[1] The complaint alleged negligence on the part of the deceased, younger Henry Cole and vicarious liability on the part of Renee Cole.

On the same day the complaint was filed, an answer was filed on behalf of both defendants, denying liability generally. Also on the same day, judgment was entered in favor of the plaintiffs pursuant to a consent order. The court awarded the following amounts, each of which was the same amount prayed for in the complaint:

| | |
|---|---|
| Kamara, as next friend of Koroma | $29,296.80 |
| Kamara, individually | $15,053.20 |
| Reverend Cole, as next friend of Russell Cole | $ 5,508.27 |
| Reverend Cole, individually | $ 8,741.73 |

Thus, Kamara received a total of $44,350, and Reverend Cole received a total of $14,250. Still on the same day, plaintiffs filed a Satisfaction of Judgment indicating the amounts had been paid in full.

The next chapter of this narrative begins on 7 October 1994, when Reverend Cole took further action in two separate legal fora. On that day, he petitioned for administration of the Estate and was appointed as personal representative. On that same day, he filed suit in the Circuit Court for Prince George's County against the (WMATA), alleging negligence in connection with the accident in which his son Henry was injured and died. The allegation is that a WMATA bus crossed the center line into young Henry Cole's lane of on-coming traffic and that

---

1. Reverend Cole sued only the Estate; he did not sue his wife. Kamara sued both defendants.

Cole swerved his van to the left and off the road in an attempt to avoid a collision. Reverend Cole brought a survival action in which he sued as the personal representative of the deceased's estate and a wrongful death action in which he sued individually (as well as to the use of the deceased's natural mother, Nankita Boseman). WMATA removed the case to the United States District Court for the District of Maryland (Southern Division, Case Number PJM–94–3185), where the case is still on-going. In October of 1995, WMATA filed a third party complaint against Renee Cole.

The catalyst of the present dispute is WMATA's motion for summary judgment filed in the federal court suit on 29 March 1996. Although the motion and its resolution are not a part of the record, the parties are in substantial agreement that the motion raised the existence of a final judgment in the instant "friendly" suit as a bar to the suit against WMATA. The parties have not informed us of any ruling on the merits of the motion.[2] Reverend Cole thereafter resigned as personal representative of the Estate on 5 April 1996, and he was replaced in this capacity four days later by Cheryl Chapman. Chapman is Reverend Cole's attorney in the federal suit and represented him in his petition for letters of administration of the Estate.[3]

Chapman, as personal representative of the Estate, and Renee Cole filed the instant motion to vacate judgment on 17 April 1996, alleging lack of personal jurisdiction due to deficient service of process. No party to the suit opposed the motion. On 3 May 1996, WMATA filed a Motion to Intervene as of right pursuant to Maryland Rule 2–214(a) and an Opposi-

---

**2.** At a hearing before Judge Spellbring on 23 August 1996, counsel for WMATA indicated that "for docket control reasons, the motion was denied without prejudice with the opportunity to renew it" if the instant motion to vacate judgment were denied.

**3.** Chapman apparently had been Reverend Cole's attorney for some time. He alleged to have first contacted her with regard to the van accident on the very day of the accident. She did not, however, represent him in the instant friendly suit. That representation was performed by Michelle Lanchester.

tion to the motion to vacate. The intervention motion was granted on 24 May 1996 and, after two rounds of hearings, the motion to vacate was denied on 26 February 1997.

## DISCUSSION

We first make plain that we are not resolving the question that is currently before the United States District Court as to the preclusive effect of a judgment in a friendly suit brought for the sole purpose of binding a minor to a settlement agreement. While that very issue is, of course, the driving force of the instant dispute, we are limited to reviewing only the lower court's orders, which did nothing more than permit intervention by WMATA and deny the motion to vacate judgment. Any opinion we could render regarding issue preclusion would not be binding upon the District Court and would therefore be entirely advisory in nature. *E.g., Hammond v. Lancaster*, 194 Md. 462, 71 A.2d 474 (1950). We would not presume that the District Court has any need for advice, and, if it finds to the contrary at a later time, it may certify a question to the proper authority, the Court of Appeals.

### Motion to Intervene

■ Appellants' first claim of error is that WMATA had no "justiciable interest" sufficient to support its intervention in the suit. There are two types of intervention contemplated in the Maryland Rules of Civil Procedure: intervention as of right and permissive intervention. With regard to intervention as of right, Maryland Rule 2–214(a) states, in pertinent part:

Upon timely motion, a person shall be permitted to intervene in an action ... when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.

A party moving for intervention as of right must show four things:

(1) the application for intervention must be timely;

(2) the applicant must have an interest in the subject matter of the action;

(3) the disposition of the action would at least potentially impair the applicant's ability to protect its interest; and

(4) the applicant's interest must be inadequately represented by existing parties.

*Pharmaceia ENI Diagnostics, Inc. v. Washington Suburban Sanitary Comm'n,* 85 Md.App. 555, 566, 584 A.2d 714 (1991); *Hartford Ins. Co. v. Birdsong,* 69 Md.App. 615, 622, 519 A.2d 219 (1987). Appellants do not question the timeliness of appellee's application or the inadequacy of representation by existing parties. Their appeal focuses primarily on the second prong (existence of an interest in the subject matter), but it also implicates the third prong (relevance of any disposition to the claimed interest). We will accordingly address both.

We will review the instant intervention order for error. WMATA argues that we should review for abuse of discretion, on the grounds that the lower court has some discretion to grant permissive interventions. Appellants conceded the abuse of discretion standard at oral argument, but we have some lingering doubts. WMATA moved to intervene as a matter of right pursuant to Rule 2–214(a) only; there was no motion for permissive intervention under subsection (b) in the alternative. The court's order granting the motion also relied exclusively on 2–214(a). We are aware of no precedent for affirming a Rule 2–214(a) grant on the alternate grounds of Rule 2–214(b), and we have some concerns that to do so would interfere in the as yet unexercised discretion of the lower court to deny a 2–214(b) motion. Furthermore, because we believe that the lower court was correct in ordering intervention as of right, we will forego ruling on the question of whether a more deferential standard of review may be warranted.

■ Our precedents on the sufficiency of an interest have tended to ask the question of whether the claimed interest "is essential to protect and ... is not otherwise protected." *Shenk v. Maryland Dist. Sav. & Loan Co.*, 235 Md. 326, 326, 201 A.2d 498 (1964); *Birdsong*, 69 Md.App. at 626, 519 A.2d 219; *see Citizens Coordinating Comm. on Friendship Heights, Inc. v. TKU Assocs.*, 276 Md. 705, 712, 351 A.2d 133 (1976). Just this year, however, in *Montgomery County v. Bradford*, 345 Md. 175, 197–98, 691 A.2d 1281 (1997), the Court of Appeals cautioned, "The phrases 'essential to protect,' 'essentiality of interest,' and 'might be disadvantaged,' used in some of our cases ... do not of themselves constitute the legal standard to be applied." Rather, a moving party must "establish[ ] 'an interest relating to the property or transaction that is the subject of the action,' and further establish that it is 'so situated that the disposition of the action may, as a practical matter, impair or impede the ability to protect that interest.'" *Id.* at 198, 691 A.2d 1281.

In *Bradford*, several plaintiff organizations sued the State Board of Education and some State officials in two different actions. The main thrust of each action was a prayer for a declaratory judgment that the State had violated the Maryland Constitution's guarantee of a minimum quality education to the "atrisk" students of Baltimore City schools. Montgomery County sought to intervene in each of the suits but was denied each time. The Court of Appeals ruled that any interest claimed by the County in the litigation against the State over the quality of Baltimore schools was "insufficient to bring its intervention motions within the ambit of Rule 2–214(a)[ ]." *Id.* at 198, 691 A.2d 1281. The County's concern that a verdict for the plaintiffs would cause an increase in State funding for Baltimore schools and a concomitant decrease in funding for Montgomery County schools was ruled "too remote and indefinite" to justify intervention, in that such a result was "contingent upon the happening of uncertain and speculative events." *Id.* A second claimed interest in avoiding the potential impact of a plaintiffs' verdict upon Montgomery County's own "at-risk" students was deemed to be "indirect,

remote, and speculative," and a third interest in preventing an eventual overhaul of the current State-local educational financing blueprint was determined to be "based entirely on supposition and speculation." *Id.* at 199–200, 691 A.2d 1281.

The Court of Appeals reached a similar result in *Shenk.* There, a shareholder in a savings and loan sought to intervene in receivership proceedings for the sole purpose of keeping herself informed as to any potentially adverse consequences that may arise in the future. The case concerned Rule 208, the precursor to current Rule 2–214. The Court found that the claimed interest was "merely speculative and affords no present basis upon which to become a party to the proceedings." 235 Md. at 326, 201 A.2d 498.

In *Birdsong,* we rejected appellant insurance company's argument that it had an interest in the litigation because the claim itself was inconsistent with the appellant's constant denial that the sole remaining defendant was covered under its policy. We did, however, make some comments as to the merits of appellant's argument. Plaintiffs had been rear-ended in their automobile by a commercial truck, and they sued multiple defendants. Appellant insured the owner of the truck and represented him in the litigation, but appellant denied coverage on the grounds that the driver was an agent of an independent contractor hired to refit the truck. The driver failed to file a responsive pleading, and a default judgment was entered against him. The plaintiffs later moved to dismiss all the other defendants besides the driver, and the motion was granted with consent. Thereafter, the insurer moved to intervene as a defendant out of concern that the plaintiffs would somehow win a judgment against the pro se driver that could later be enforced against it as insurer. We maintained in dicta that the asserted interest was "merely speculative" in that it "was predicated on the possible occurrence of two events: an award of damages against [the driver] and an attempt by the [plaintiffs] to enforce such an award against" the insurer. We felt that this interest would have been insufficient to support intervention as of right, had we reached the issue.

Not every case has involved so speculative an interest. In *TKU,* commercial property owners brought a suit against Montgomery County, seeking a declaration that a recent zoning alteration had not affected their development rights. Local residents sought to intervene, but their application was denied. The Court of Appeals took notice of the fact that the developers and the residents were already opposing parties in separate statutory appellate proceedings challenging the same zoning alteration. Even though the legal issues in the appeal were different from those of the declaratory judgment action, the Court of Appeals found a strong basis for intervention as of right.

> If appellees were to prevail here, the practical effect would be a reversal of the council's zoning action as applied to their property, and appellants would have lost the very right granted them by statute to contest the final result. The disposition of this case, then, which deals with a transaction in which appellants claim an interest, may as a practical matter impair or impede their ability to protect that interest.

276 Md. at 712, 351 A.2d 133. The Court did not make clear whether "that" interest is a zoning interest or a statutory appellate interest, but it is likely to have been intended to be a combination of the two.

In *Stewart v. Tuli,* 82 Md.App. 726, 573 A.2d 109 (1990), this Court reversed the circuit court's denial of a motion to intervene, relying in part upon the sufficiency of the interest alleged. Property sellers had nullified a contract of sale pursuant to a contingency clause after becoming dissatisfied with the financial information provided by the potential purchaser. The sellers then entered into a second contract of sale with another party. The first purchaser brought a suit for specific performance and the second purchasers sought to intervene. In such a situation, we found that the second purchasers "undoubtedly" had a sufficient interest in the subject matter.

In the instant case, we can find nothing speculative about the interest asserted by WMATA. As of the time of the

motion to intervene (and as of this date, as well), all the necessary events had occurred to give WMATA a real interest in the motion to vacate judgment. A final judgment had already been entered against the Estate in a negligence suit. The Estate had already sued WMATA for negligence in a related action, and WMATA had already moved for summary judgment based on the existence of the prior judgment. As Maryland is a contributory negligence jurisdiction, the summary judgment motion apparently asserted a complete defense. The Estate had already moved to vacate the prior judgment, and the Federal court had yet to rule on the merits of the summary judgment motion, perhaps waiting to see if the motion to vacate would succeed. It is hard to imagine what further preparatory step could be taken to make WMATA's interest more palpable. The resolution of the motion to vacate would determine whether WMATA would have the opportunity to present this complete defense to suit. The fact that the Federal court may eventually deny the summary judgment motion does not render the interest speculative or moot the issue. Just as in *TKU*, WMATA had an interest in preventing the foreclosure of its opportunity to protect its legal interests in another forum.[4] Appellant's argument to the contrary, that WMATA could not possibly have interest in a friendly suit to which it was not a party, is not true to our precedents.[5] We find that WMATA's interest, therefore, was entirely sufficient, that it related to the subject of the action,

---

**4.** While there may be instances in which the moving party's pending arguments before the other tribunal are so meritless or untenable as to nullify its asserted interest in the action at issue, such is not the case here. Without expressing any sentiments on the proper resolution of the summary judgment motion, we note that it presents a legal question not yet resolved in this jurisdiction.

**5.** In arguing that WMATA's interest was insufficient, the appellant cites three cases, none of which are applicable here. Two of the cases, *Patuxent Oil Co. v. County Com'rs of Anne Arundel County*, 212 Md. 543, 129 A.2d 847 (1957), and *Boyds Civic Ass'n v. Montgomery County Council*, 309 Md. 683, 526 A.2d 598 (1987), discuss whether there is a sufficient controversy to bring a declaratory judgment action, and the

and that the disposition of the action may as a practical matter impede WMATA's ability to protect its interest. Intervention as of right was therefore warranted.

Appellants argue on policy grounds that to permit intervention here, where the asserted interest is a mere "possible collateral effect of a suit or judgment," would create a precedent that would make litigation more cumbersome, more protracted, and less conducive to settlements. We do not agree. Appellants err in failing to recognize the rarity of the present situation and the resulting narrowness of the present holding. Prior to the entry of a final judgment against the Estate, WMATA could never have claimed a valid interest in the suit. *Bradford, Shenk,* and *Birdsong* all indicate that a specific potential resolution of a suit is too speculative an interest to warrant intervention. Even after entry of final judgment, WMATA's interest in the litigation would have been entirely speculative until an actual suit was filed against it, as was indicated in *Bradford* and *Birdsong.* It is further plain that WMATA's interest is dependent upon the fact that the asserted theory of recovery (negligence) underlying the prior judgment has a direct legal consequence (contributory negligence) in the second suit. While we need not further narrow the instant holding in order to parry appellant's argument, we also point out that WMATA's interest relates to a legal defense that is a *complete* defense, that a motion for summary judgment on that defense has already been filed, and that the specific issue before the other court is one of first impression.

### Motion to Vacate Judgment

Appellants challenge the lower court's denial of their motion to vacate the judgment. They argue that neither one of them

---

third, *Mayor and City Council of Ocean City v. Purnell–Jarvis, Ltd.,* 86 Md.App. 390, 586 A.2d 816 (1991), is a ruling on standing to sue for judicial review of an administrative order from the Maryland Tax Court. These opinions focus on the jurisdiction of a court to entertain a controversy and the standing of a party to bring a case. They are not instructive in a situation, such as this one, where neither the jurisdiction of the court nor the standing of the parties is questioned but where a non-party seeks to intervene.

was ever served with service of process and that the judgment is therefore void because the court never acquired personal jurisdiction over them. Appellee counters that any objection by the Estate based on service of process was waived when attorney Francis J. Ford entered an appearance on its behalf. Appellee has taken no position on Renee Cole's motion to vacate, either in this Court or below. Appellants' retort is that the appearance was completely unauthorized and, in fact, unknown to either of them. The circuit court determined that each defendant had authorized an appearance by Mr. Ford, and denied the motion.

■■ Courts exercise revisory power over their judgments pursuant to Maryland Rule 2–535. Subsection (a) of the Rule applies only where the motion to vacate is filed within thirty days of the entry of judgment, *i.e.*, before the judgment is enrolled. As the instant motion was filed over two years after the judgment, appellants rely exclusively on subsection (b) of the rule. That portion of the rule provides, "On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity." The existence of such fraud, mistake, or irregularity must be demonstrated by clear and convincing evidence. *Tandra S. v. Tyrone W.*, 336 Md. 303, 314, 648 A.2d 439 (1994). Moreover, Rule 2–535 applies to all final judgments; the standards do not change when the judgment is by consent. *Bernstein v. Kapneck*, 46 Md.App. 231, 238–40, 417 A.2d 456 (1980); *Prince George's County v. Barron*, 19 Md.App. 348, 351, 311 A.2d 453 (1973).

■■ "Mistake" in the context of Rule 2–535 is limited to those instances in which a jurisdictional mistake is involved. *Bernstein*, 46 Md.App. at 239, 417 A.2d 456. Deficient service of process constitutes just such a jurisdictional mistake and therefore is a valid basis upon which to request that an enrolled judgment be vacated. *Miles v. Hamilton*, 269 Md. 708, 309 A.2d 631 (1973). There is no dispute that in the instant case no service was made on either defendant. Nevertheless, where, as in this case, a party enters a general

appearance, either through counsel or personally, objections to deficiencies in service of process are waived. *Howell v. Bethlehem–Sparrows Point Shipyard,* 190 Md. 704, 711–13, 59 A.2d 680 (1948); *Lovering v. Lovering,* 38 Md.App. 360, 363, 380 A.2d 668 (1977). Furthermore, where a general appearance has been entered by an attorney on behalf of a client, there is a *prima facie* presumption that the appearance is authorized. *Margos v. Moroudas,* 184 Md. 362, 371, 40 A.2d 816 (1945); *Lovering,* 38 Md.App. at 362, 380 A.2d 668. This presumption may only be overcome by clear and convincing evidence of a lack of authority. *Lovering,* 38 Md.App. at 362, 380 A.2d 668. The trial court's determination that a party has failed to overcome the presumption will only be reversed for clear error. *Carroccio v. Thorpe,* 230 Md. 457, 463, 187 A.2d 678 (1963); *Lovering,* 38 Md.App. at 363, 380 A.2d 668.

While we have almost two centuries of precedents stating that an appearance by an attorney is presumptively authorized, most of these cases only concern disputes over whether the attorney was authorized to perform some discrete act or another during the course of a trial or appeal. We are aware of only two Maryland cases dealing with an assertion that an attorney's appearance itself was unauthorized. In *Kelso v. Stigar,* 75 Md. 376, 404–05, 24 A. 18 (1892), this assertion was raised offensively by a defendant in claiming that one of the named plaintiffs had not agreed to file the lawsuit and, given the lack of any objection by that plaintiff, the Court of Appeals refused to look beyond the presumption of authority.

The *Lovering* case presents a situation much closer to the one alleged here. Appellant wife brought a divorce suit which the circuit court dismissed based upon a divorce decree obtained by the husband four years prior in Pennsylvania. The claim on appeal was that the foreign court never obtained personal jurisdiction over the wife because appearance by counsel on her behalf had been unauthorized. At the time the earlier suit was brought, appellant was hospitalized in Illinois for mental illness. (There was no assertion of *non compos mentis.*) She admitted on cross-examination that, while institutionalized, she received several letters from her Pennsylva-

nia lawyer, but that she did not pay much attention to them. At least one of those letters concerned in some way the filing of the divorce action. Four months after the suit was filed, she was discharged and returned to Pennsylvania, where she signed a divorce settlement. We noted that the settlement agreement was drafted by the husband's lawyer and that both parties signed in the presence of both of their attorneys while at the office of the wife's attorney. No reference was made at that time to the pending suit. The wife then immediately returned to Illinois to be admitted into another mental institution. The husband reinstated the suit, and the wife's attorney accepted service of process and entered an appearance on her behalf. He apparently took no further action than this, as he filed no answer to the complaint and did not appear at the scheduled hearing. The Pennsylvania Court ruled that it had jurisdiction over the wife, and it granted the divorce to her husband. In the wife's suit four years later, the circuit judge found that the wife had failed to prove by clear and convincing evidence that the appearance on her behalf was not authorized. We ruled that the lower court's determination was not clearly erroneous, taking special notice of the wife's long delay.

We are also instructed by *Bethlehem Steel Corporation v. Devers*, 389 F.2d 44 (4th Cir.1968), cited favorably in *Lovering* and relied upon by the court below in the instant suit. Although it does not represent the majority rule among federal circuit courts, *Bethlehem* applied the same burden of proof and standard of review we approved in *Lovering*. Plaintiff sued multiple defendants on a debt of a dissolved corporation and obtained summary judgment against one defendant, Devers. Before thirty days had expired, Devers moved the trial court to rescind the summary judgment order, arguing that he was never served with process and the attorney who had entered an appearance on his behalf had no authority to do so. The motion was submitted by two attorneys making their first appearance in that case. Additionally, the trial attorney submitted an affidavit stating that he had represented several other defendants in the case and that he only entered an

appearance on behalf of Devers through that attorney's own admitted "inadvertence, mistake and a marked degree of carelessness." The trial court denied the motion, finding sufficient evidence to infer that Devers had in fact known about the proceedings against him during their eighteen month pendency and had thereby ratified the actions of counsel. Specifically, documents filed by defense counsel contained information that would have had to have originated from Devers, other non-trial counsel for Devers had worked very closely with defense counsel, and nobody, including Devers himself, had stated under oath that Devers was unaware of the suit during the preceding eighteen months. The Fourth Circuit affirmed under the clearly erroneous standard, specifically pointing to the close interactions between Devers and several persons involved in the trial and the absence of any sworn statement from Devers himself.

 Guided by these precedents and based on the facts of the instant case, we find that the circuit court did not commit clear error when it found that the appellants had failed to produce the clear and convincing evidence necessary to overcome the presumption that the appearance on their behalf was authorized. With regard to Renee Cole, she has submitted sworn deposition testimony that she never authorized the appearance, that she never heard of or had any communications with the attorney prior to the day of the suit or for the fourteen months following, and that she was unaware that she was a party to any suit or even that the suit existed. She also plausibly maintains to have been quite ill at the time of the suit. Her testimony is entirely unrebutted, as WMATA has consistently declined to take any position regarding her motion to vacate.

Even giving full credit to her testimony, however, we must affirm. She testified that the van in which her stepson died was titled in her name and insured under a policy with GEICO. Her counsel has vociferously maintained in arguments to this Court and the circuit court that the counsel who appeared on her behalf in the friendly suit was employed by

GEICO. To say the least, it is highly improbable that GEICO would have undertaken the expense of supplying legal counsel for an insured in a matter covered by that insured's policy in the absence of a clause, commonly found in automobile insurance policies, obliging such representation. To the contrary, the circumstances strongly imply that the policy contained the standard clauses obligating GEICO to defend Renee Cole in case of litigation and/or empowering GEICO to settle claims against her within the policy limits. Renee Cole did not make the policy a part of the record, neither did she submit any statement, sworn or otherwise, by the attorney appearing on her behalf to corroborate her claim that the representation was unauthorized.

 We have the benefit of many precedents construing under different circumstances these clauses providing for legal representation. For example, it is settled that, where a party insured under an automobile insurance policy complains that the trial attorney provided by the insurer represented potentially conflicting interests, "[t]he customary clause ... requiring the insured to permit the insurer's lawyer to defend claims insured against is consent in advance by the insured to dual representation." *Fidelity and Cas. Co. of New York v. McConnaughy*, 228 Md. 1, 10, 179 A.2d 117 (1962). *See also Allstate Ins. Co. v. Campbell*, 334 Md. 381, 395, 639 A.2d 652 (1994) ("Under the terms of most [automobile] liability insurance policies, the insured agrees to permit the insurer to choose counsel to defend the insured against claims by third parties."). Not only do these customary clauses charge the insurer with the duty to defend, but the Court of Appeals has held that such clauses also give the insurer the *right* to negotiate and settle reasonable claims on behalf of the insured, at least within policy limits. *Sharrow v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 766, 511 A.2d 492 (1986). As long as no actual conflict of interest develops, the insured must cooperate with the insurer in defending the claim, and the insured has no right to demand that the insurer provide her with independent counsel. *Roussos v. Allstate Ins. Co.*, 104 Md.App. 80, 86–88, 655 A.2d 40 (1995). From these

further-reaching rulings we interpolate the narrower principle that such clauses can also authorize, at least impliedly, an initial appearance on behalf of the insured in a court of law. We acknowledge that it is rare for a court to infer the existence of any particular contractual agreement where the contract is not a part of the record, but where (1) the moving party must overcome a strong presumption, (2) the circumstances give rise to a strong inference that an admittedly existing contract proves the presumption, and (3) the moving party is the only party in possession of the contract, it is fair to charge the moving party with producing that contract to disprove the presumption. Under all the circumstances of the instant case, there was no clear error in the lower court's ruling that Renee Cole's sole sworn statement failed to overcome by clear and convincing evidence the presumption that the appearance by counsel on her behalf was authorized.[6]

The same reasoning applies equally well to the Estate's assertion that the appearance by the GEICO-supplied lawyer on its behalf was unauthorized, but we need not rely on this basis alone in order to affirm the lower court. The Estate's future personal representative, Reverend Cole, was a party to the same suit, was present in the courthouse on the day of the suit, and entered an appearance through another attorney. He thus was a willing participant in the very same suit in which the Estate's current personal representative, Cheryl Chapman, now claims that an appearance on the Estate's behalf was unauthorized. Not only did Reverend Cole have the benefit of being represented in the suit by counsel, he also had the advice of attorney Chapman in matters regarding the van accident from the very day of the accident throughout his entire eighteen-month term as personal representative. The Estate argues that Reverend Cole could not have authorized the suit because, according to his

---

6. We are mindful, as was the lower court, of the fact that 28 months had passed between the entry of judgment and motion to vacate judgment. We reserve any opinion on whether the motion could have been untimely under the circumstances or whether the delay could have constituted a waiver of the authorization issue.

deposition statement, he did not know that the court proceedings on that day involved the bringing of a lawsuit or that the Estate would be a party in any such suit. Nevertheless, he is charged with the knowledge of his attorneys in this matter, and he is bound by their acts on his behalf. *Thomas v. Hopkins*, 209 Md. 321, 326–27, 121 A.2d 192 (1956). In light of these facts, we find no clear error in the finding that the Estate failed to overcome the presumption that the appearance on its behalf was authorized.[7]

■■■■■■ The Estate argues that it was impossible for it to have authorized the appearance of Mr. Ford in the instant suit because no personal administrator was appointed until nine months following the judgment. Personal administrators, however, do possess the power to act on behalf of an estate even before they are appointed. Section 6–105(a) of the Estates and Trusts Article of the Maryland Code reads: "The duties and powers of a personal representative commence upon the issuance of his letters, but when done in good faith, *his acts occurring prior to appointment have the same effect as those occurring after.*" (Emphasis added.) We do not read this language so broadly as to state that *every* act by a future personal representative will necessarily be attributed to the estate. We hold only that Reverend Cole, as the future personal representative, was not incapable of authorizing Mr. Ford to appear on behalf of the Estate at the time of the friendly suit.

The Estate counters that the act of authorizing an appearance in the instant suit by Reverend Cole is not within the compass of § 6–105(a) and thus not binding upon the Estate because as a matter of law this act could not have been "in good faith." The Estate does not dispute that a personal representative has authority to settle claims against an estate

---

7. Again, as with Renee Cole, we are mindful that well over two years passed before the Estate moved to set aside the judgment. This period includes 18 months during which Reverend Cole served as personal representative while being represented by Chapman. We reserve judgment as to how the delay may have prejudiced the Estate's position.

pursuant to Estates and Trusts § 7–401. The asserted lack of good faith arises from the fact that Reverend Cole was a named plaintiff and the Estate was a named defendant, so that Reverend Cole was necessarily acting "in a 'hostile' capacity in the friendly suit" and was, in effect, self-dealing. There is a certain incongruity in alleging a per se hostility between purportedly friendly parties, but even in spite of this we do not find such an act to be necessarily in bad faith. A similar argument was raised in *Ohio Cas. Ins. Co. v. Hallowell*, 94 Md.App. 444, 617 A.2d 1134 (1993), where a husband and wife agreed jointly to indemnify the State with regard to some payment bonds. The wife died thereafter, and the widower, prior to becoming the personal representative of his deceased wife's estate, entered into a forbearance agreement extending the statute of limitations for specific claims on the bonds. We ruled there that, as long as the extension of claims benefitted the estate, the fact that it also benefitted the husband did not render it "in bad faith." The argument of bad faith in the instant case is even weaker than the argument in *Hallowell*, because here the Estate does not attack the terms of the settlement but the mere authorization of appearance of counsel on its behalf. In other words, even if the consent judgment were a bad faith act by Reverend Cole, that would not entitle the Estate to a vacation of judgment at this stage, because it would not indicate a lack of personal jurisdiction over the Estate. Our concern here is only with authorization of an appearance of counsel. We find that Reverend Cole's authorization of appearance on behalf of the Estate benefitted the Estate by facilitating the resolution of certain contingent liabilities regarding injured minors who could not be bound to a conventional settlement agreement; therefore, we find that the authorization of appearance was not in bad faith.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**